## BARNITZ *v.* BEVERLY.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 863. Submitted April 18, 1896. — Decided May 18, 1896.

A state statute which authorizes the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, or which extends the period of redemption beyond the time formerly allowed, cannot constitutionally apply to a sale under a mortgage executed before its passage.

On November 1, 1885, George A. Kirtland executed to Martha Barnitz several promissory notes, covering a principal debt of $1500 and interest, payable semi-annually for five years, at the rate of eight per cent per annum, and after ma-

turity at the rate of twelve per cent per annum. These notes were secured by a mortgage of the same date upon a quarter section of land in Shawnee County, Kansas. The principal note and the last note for interest not having been paid, an action was commenced, on January 21, 1893, in the District Court of Shawnee County by Martha Barnitz to recover on said unpaid notes and to foreclose the mortgage. John L. Beverly and others were made co-defendants with Kirtland. On July 7, 1893, a judgment was rendered against Kirtland for the sum of $2113.46 and costs, and against him and the other defendants for the foreclosure of the mortgage and the sale of the mortgaged premises. Appraisement having been waived, the judgment, pursuing the laws of Kansas, provided for a stay of execution for six months, and that interest should run at the rate of twelve per cent per annum. On January 9, 1894, an order of sale was issued, and on February 12, 1894, the mortgaged property was sold thereunder at sheriff's sale to Martha Barnitz for the sum of $2000. On February 16, 1894, a motion was filed in the District Court for a confirmation of the sale, and this motion came on for hearing on February 26, 1894, when Beverly appeared and claimed to be the owner of the premises, by virtue of conveyances since the date of the mortgage, and to be in possession thereof in good faith by a tenant, and asked the court to order the sheriff to execute to the purchaser only a certificate of purchase, as provided for by chapter 109 of the Laws of Kansas of 1893. The sale was confirmed, and Beverly's motion was overruled, and the court ordered that the sheriff should execute to the purchaser, Martha Barnitz, a deed for the premises.

John L. Beverly took the case on error to the Supreme Court of the State, and that court, on April 30, 1895, affirmed the judgment of the District Court. A motion for a rehearing was subsequently allowed — the membership of the Supreme Court having been in the meantime changed — and on December 7, 1895, the Supreme Court reversed and set aside its previous decision and judgment, reversed the judgment and ruling of the District Court, and directed that a sheriff's deed should not be executed to the purchaser, but that a cer-

tificate of purchase should be given, as provided for by chapter 109 of the Laws of 1893.

To this judgment of the Supreme Court of Kansas a writ of error was sued out from this court.

Chapter 109 of the Laws of 1893 is as follows:

"SEC. 1. After sale by the sheriff of any real estate on execution, special execution, or order of sale, he shall, if the real estate sold by him is not subject to redemption, at once execute a deed therefor to the purchaser; but if the same is subject to redemption, he shall execute to the purchaser a certificate containing a description of the property and the amount of money paid by such purchaser, together with the amount of the costs up to said date, stating that unless redemption is made within eighteen months thereafter according to law, that the purchaser or his heirs or assigns will be entitled to a deed to the same: *Provided,* That any contract in any mortgage or deed of trust waiving the right of redemption shall be null and void.

"SEC. 2. The defendant owner may redeem any real property sold under execution, special execution, or order of sale, at the amount sold for, together with interest, costs and taxes, as provided for in this act, at any time within eighteen months from the day of sale as herein provided, and shall in the meantime be entitled to the possession of the property; but where the court or judge shall find that the lands and tenements have been abandoned, or are not occupied in good faith, the period of redemption for defendant owner shall be six months from the date of sale, and all junior lien holders shall be entitled to three months to redeem after the expiration of said six months."

"SEC. 23. Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for.

"SEC. 24. The holder of the certificate of purchase shall be

entitled to prevent any waste or destruction of the premises purchased, and for that purpose the court, on proper showing, may issue an injunction; or, when required to protect said premises against waste, appoint and place in charge thereof a receiver, who shall hold said premises until such time as the purchaser is entitled to a deed, and shall be entitled to rent, control and manage the same, but the income during said time, except what is necessary to keep up repairs and prevent waste, shall go to the owner or defendant in execution, or the owner of its legal title.

" Sec. 25. The provisions of this act shall apply to all sales under foreclosure of mortgage, trust deed, mechanics' lien or other lien, whether special or general, and the terms of redemption shall be the same.

" Sec. 26. The sheriff shall at once make a return of all sales made under this act to the court; and the court, if it finds the proceedings regular and in conformity with law and equity, shall confirm the same and direct that the clerk make an entry upon the journal that the court finds that the sale has in all respects been made in conformity to law, and order that the sheriff make to the purchaser the certificate of sale or deed provided for in section 1 of this act."

*Mr. D. M. Valentine, Mr. A. A. Godard, Mr. Leonard S. Ferry* and *Mr. Thomas F. Doran* for plaintiff in error.

*Mr. E. A. McMath* and *Mr. William J. Scott* for defendant in error.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

No provision of the Constitution of the United States has received more frequent consideration by this court than that which provides that no State shall pass any law impairing the obligation of contracts. This very frequency would appear to have rendered it difficult to apply the result of the court's deliberations to new cases differing somewhat in their facts from those previously considered.

This record discloses that, in the present case, the Supreme Court of Kansas filed two opinions, in which, after elaborate reviews of the decisions of this court, opposite conclusions were reached. The case was twice argued and decided. On the first hearing a majority of that court held, expressing its views in an opinion by Chief Justice Horton, that chapter 109 of the Laws of Kansas of 1893 did not apply to contracts made before its passage, and that, if it did so apply, the law was void, as respects prior contracts, because it impaired their obligations.

A change in the membership of the court having taken place, a rehearing was had; and it was held by a majority of the court, speaking through Chief Justice Martin, that the act in question was applicable and valid in the case of contracts made before and after its passage. *Beverly* v. *Barnitz,* 55 Kansas, 451, 466.

It is the last decision which is brought before us for review. In so far as it construes the act to be applicable to prior contracts, we are, of course, bound by that decision. Whether, when so construed, the act is valid, is a question open for our consideration.

The decisions of this court are numerous in which it has been held that the laws which prescribe the mode of enforcing a contract, which are in existence when it is made, are so far a part of the contract that no changes in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the Constitution of the United States. But it will be sufficient for our present purpose to mention a few only.

*Bronson* v. *Kinzie,* 1 How. 311, 316, holds that a state law, passed subsequently to the execution of a mortgage, which declares that the equitable estate of the mortgagor shall not be extinguished for twelve months after a sale under a decree in chancery, and which prevents any sale unless two thirds of the amount at which the property has been valued by appraisers shall be bid therefor, is within the clause of the Constitution of the United States which prohibits a State from passing a law impairing the obligation of contracts. In

this case, the court dealt with the contention, usually made on these occasions and which is relied on by the defendants in error in the present case, that the law was a regulation of the remedy and did not directly affect the contract; and Chief Justice Taney said:

"Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the Constitution."

And he quoted the language of the court in *Green* v. *Biddle*, 8 Wheat. 75:

"It is no answer that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owners, they are just as much a violation of the compact as if they directly overturned his rights and interests. . . . If the remedy afforded be qualified and restrained by conditions of any kind, the right of the owner may, indeed, subsist, and be acknowledged, but it is impaired, and rendered insecure, according to the nature and extent of such restrictions."

Proceeding to apply these principles to the case before him, the Chief Justice further said:

"It was the plaintiff's absolute and undoubted right, under an ordinary mortgage deed, if the money is not paid at the appointed day, to go into the court of chancery and obtain its order for the sale of the whole mortgaged property, (if the whole is necessary,) free and discharged from the equitable interest of the mortgagor. This is his right by the law of the contract; and it is the duty of the court to maintain and enforce it, without any unreasonable delay.

"When this contract was made, no statute had been passed by the State changing the rules of law or equity in relation to a contract of this kind. None such, at least, has been brought to the notice of the court; and it must, therefore, be

governed, and the rights of the parties under it measured, by the rules as above stated. They were the laws of Illinois at the time; and, therefore, entered into the contract, and formed a part of it, without any express stipulation to that effect in the deed. Thus, for example, there is no covenant in the instrument giving the mortgagor the right to redeem, by paying the money after the day limited in the deed, and before he was foreclosed by the decree. . . . Yet no one doubts his right or his remedy, for, by the laws of the State then in force, this right and this remedy were a part of the law of the contract, without any express agreement by the parties. So, also, the rights of the mortgagee, as known to the laws, required no express stipulation to define or secure them. They were annexed to the contract at the time it was made, and formed a part of it, and any subsequent law, impairing the rights thus acquired, impairs the obligations which the contract imposed.

"This brings us to examine the statutes of Illinois which have given rise to this controversy. As concerns the law of February 19, 1841, it appears to the court not to act merely on the remedy, but directly upon the contract itself, and to engraft upon it new conditions injurious and unjust to the mortgagee. It declares that, although the mortgaged premises should be sold under the decree of the court of chancery, yet that the equitable estate of the mortgagor shall not be extinguished, but shall continue twelve months after the sale; and it moreover gives a new and like estate, which before had no existence, to the judgment creditor, to continue for fifteen months. If such rights may be added to the original contract by subsequent legislation, it would be difficult to say at what point they must stop. An equitable interest in the premises may, in like manner, be conferred upon others; and the right to redeem may be so prolonged as to deprive the mortgagee of the benefit of his security by rendering the property unsalable for anything like its value. This law gives to the mortgagor and to the judgment creditor an equitable estate in the premises, which neither of them would have been entitled to under the original contract; and these new interests

are directly and materially in conflict with those which the mortgagee acquired when the mortgage was made. Any such modification of a contract by subsequent legislation, against the consent of one of the parties unquestionably impairs its obligations, and is prohibited by the Constitution."

In *McCracken* v. *Hayward*, 2 How. 608, 612, there came for consideration the validity of a law of the State of Illinois, providing that a sale shall not be made of property levied on under an execution, unless it should bring two thirds of its valuation according to the opinion of three householders. The opinion of the court was pronounced by Mr. Justice Baldwin, in the course of which he used the following language:

"In placing the obligation of contracts under the protection of the Constitution, its framers looked to the essentials of the contract more than to the form and modes of proceeding by which it was to be carried into execution; annulling all state legislation which impaired the obligation, it was left to the States to provide and shape the remedy to enforce it.

"The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made. These are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either than that which the terms of the contract indicate, according to their settled legal meaning. When it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution. . . . The obligation of the contract between the parties, in this case, was to perform the promises

and undertakings contained therein; the right of the plaintiff was to damages for the breach thereof, to bring suit and obtain a judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws of Illinois. . . . Any subsequent law which denies, obstructs or impairs this right, by superadding a condition that there shall be no sale for any sum less than the value of the property levied on, to be ascertained by appraisement, or any other mode of valuation than a public sale, affects the obligation of the contract, for it can be enforced only by a sale of the defendant's property, and the prevention of such sale is the denial of a right. The same power in a state legislature may be carried to any extent, if it exists at all; it may prohibit a sale for less than the whole appraised value, or for three fourths, or nine tenths, as well as for two thirds, for if the power can be exercised to any extent, its exercise must be a matter of uncontrollable discretion, in passing laws relating to the remedy which are regardless of the effect on the right of the plaintiff."

In *Howard* v. *Bugbee*, 24 How. 461, a statute of the State of Alabama, authorizing a redemption of mortgaged property in two years after the sale under a decree, by *bona fide* creditors of the mortgagor, was held unconstitutional and void as to sales made under mortgages executed prior to the enactment. It was contended that the law did not affect the mortgage contract, but only enlarged the time at the completion of which the purchaser at the mortgage sale would acquire an indefeasible title, and that the new law only operated as between the purchaser and *bona fide* creditors of the mortgagor. But this court, through Mr. Justice Nelson, recognized the cases of *Bronson* v. *Kinzie* and *McCracken* v. *Hayward* as applicable to and decisive of the case.

*Brine* v. *Insurance Company*, 96 U. S. 627, 637, is worthy of notice, because in that case the court had occasion to apply the principles of previous cases, announced in protection of the rights of creditors, to the case of a mortgagor whose land had been ordered by the Circuit Court of the United States for the Northern District of Illinois to an immediate sale, in

disregard of a law of the State in existence at the time the mortgage was executed, which allowed to the mortgagor twelve months to redeem after a sale under a decree of foreclosure, and to his judgment creditor three months after that.

The view of the trial court was that remedy of an immediate sale, by decree of the Circuit Court of the United States sitting in equity, was not affected by the state statute. But this court held, through Mr. Justice Miller, that all the laws of a State existing at the time a mortgage or any other contract is made, which affect the rights of the parties to the contract, enter into and become a part of it, and are obligatory on all courts which assume to give a remedy on such contracts — that the construction, validity and effect of contracts are governed by the place where they are made and are to be performed, if that be the same — that it is therefore said that these laws enter into and become a part of the contract. In the opinion it was said:

"There is no doubt that a distinction has been drawn, or attempted to be drawn, between such laws as regulate the rights of the parties, and such as apply only to the remedy. It may be conceded that in some cases such a distinction exists. In the recent case of *Tennessee* v. *Sneed*, 96 U. S. 69, we held that so long as there remained a sufficient remedy on the contract, an act of the legislature, changing the form of the remedy, did not impair the obligation of the contract. But this doctrine was said to be subject to the limitation that there remained a remedy which was complete, and which secured all the substantial rights of the party. At all events, the decisions of this court are numerous that the laws which prescribe the mode of enforcing a contract, which are in existence when it is made, are so far a part of the contract that no changes in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the Constitution of the United States."

The learned justice, in enforcing his argument, quoted largely from the opinion of Chief Justice Taney in the case of *Bronson* v. *Kinzie*, as expressing truly "the sentiment of the

court as it was then organized, as it is organized now, and as the law of the case."

These principles were applied in the case of *Seibert* v. *Lewis*, 122 U. S. 284, where, after citing *Bronson* v. *Kinzie*, *Von Hoffman* v. *City of Quincy*, 4 Wall. 535, and *Louisiana* v. *New Orleans*, 102 U. S. 203, as declaring the settled doctrine of this court that "the remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation," the court, through Mr. Justice Matthews, held: That the legislature of Missouri having, by the act of March 23, 1868, to facilitate the construction of railroads, enacted that the county court should, from time to time, levy and cause to be collected, in the same manner as county taxes, a special tax in order to pay the interest and principal of any bond which might be issued by a municipal corporation in the State on account of a subscription, authorized by the act, to the stock of a railroad company, which tax should be levied on all the real estate within the township making the subscription, in accordance with the valuation then last made by the county assessor for county purposes, it was a material part of this contract that such creditor should always have the right to a special tax to be levied and collected in the same manner as county taxes at the same time might be levied and collected; that the provisions contained in the subsequent enactments of Missouri, respecting the assessment and collection of such taxes, were not a legal equivalent for the provisions of the act of 1868, and that the law of 1868, although repealed by the legislature of Missouri, was still in force for the purpose of levying and collecting the tax necessary for the payment of a judgment recovered against a municipal corporation in the State upon a debt incurred by subscribing to the stock of a railroad company in accordance with its provisions.

The case of the *Conn. Mutual Life Ins. Co.* v. *Cushman*, 108 U. S. 51, does not collide with the previous and subsequent cases. There the new statute did not lessen the duty of the mortgagor to pay what he had contracted to pay, nor affect the time of payment, nor affect any remedy which

the mortgagee had by existing law for the enforcement of his contract.

Neither is the case of *Morley* v. *Lake Shore & Michigan Southern Railway Co.*, 146 U. S. 162, in anywise inconsistent with the cases above cited. The holding there was that the rate or amount which was prescribed by the statute of a State, as damages for a failure to pay or satisfy an existing judgment, was a matter within the control of the State, as a matter of public policy, and did not arise out of the contract between the creditor and the debtor.

Without pursuing the subject further, we hold that a statute which authorizes the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, or which extends the period of redemption beyond the time formerly allowed, cannot constitutionally apply to a sale under a mortgage executed before its passage.

Let us briefly apply the conclusion thus reached to the facts of the present case.

The plaintiff was the holder of several promissory notes, dated November 1, 1885, secured by a mortgage of the same date upon a tract of land in Shawnee County, Kansas. The mortgage contained an express waiver of an appraisement of the real estate. Default in payment having ensued, the suit was brought, praying that the mortgaged premises should be sold according to law, without appraisement, that the proceeds arising from the sale should be applied to the payment of the indebtedness due the plaintiff, and that the defendants should be forever barred and precluded of any right of redemption.

Under the law, as it existed at the time when the mortgage was made, after a foreclosure and sale of the mortgaged premises the purchaser was given actual possession as soon as the sale was confirmed and the sheriff's deed issued. Thereafter the mortgagor or the owner had no possession, title or right in any way to the premises.

Under the new law the mortgagor shall have eighteen months from the date of sale within which to redeem, and, in the meantime, the rents, issues and profits, except what is necessary to keep up repairs, shall go to the mortgagor or

the owner of the legal title, who in the meantime shall be
entitled to the possession of the property. The redemption
payment is to consist, not of the mortgage debt, interest and
costs, but of the amount paid by the purchaser, with interest,
costs and taxes.

In other words, the act carves out for the mortgagor or the
owner of the mortgaged property an estate of several months
more than was obtainable by him under the former law, with
full right of possession, and without paying rent or account-
ing for profits in the meantime. What is sold under this act
is not the estate pledged, (described in the mortgage as a good
and indefeasible estate of inheritance, free and clear of all
incumbrance,) but a remainder — an estate subject to the pos-
session, for eighteen months, of another person who is under
no obligation to pay rent or to account for profits.

The twenty-third section of the act should not be over-
looked, providing that real estate once sold upon order of
sale, special execution or general execution, shall not again
be liable for sale for any balance due upon the judgment or
decree under which the same is sold, or any judgment or lien
inferior thereto, and under which the holder of such lien had
a right to redeem.

Obviously this scheme of foreclosure renders it necessary
for the mortgagee to himself bid, or procure others to bid,
the entire amount of the mortgage debt, and thus, in effect,
release the debtor from his personal obligation.

We, of course, have nothing to do with the fairness or the
policy of such enactments as respects those who choose to
contract in view of them. But it seems impossible to resist
the conviction that such a change in the law is not merely the
substitution of one remedy for another, but is a substantial
impairment of the rights of the mortgagee as expressed in the
contract. Where, in a mortgage, an entire estate is pledged
for the payment of a debt, with right to sell the mortgaged
premises free from redemption, can that be valid legislation
which would seek to substitute a right to sell the premises
subject to an estate or right of possession in the debtor or his
alienees for eighteen months?

Martha Barnitz held Kirtland's notes secured by a mortgage. Of course, under the contract thus created, she had a right to resort to other property of the debtor to make up for any deficiency remaining after the sale of the real estate mortgaged. As the law stood at the time the contract was made, if Kirtland, either by purchase at the sale or by subsequent transactions, became the owner of the real estate, Mrs. Barnitz had a legal right to again levy thereon and subject it to the payment of the remnant of her debt. But this law, as we have seen, in express terms declares that this real estate shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold. This cannot be held to mean merely that the land is sold free from existing liens, for such would be the legal effect of the sale at any rate. It plainly means that the balance of the debt shall not be made out of the lands, even if and when they become the property of the debtor. Nor can it be said that such a question is not now before us. What we are now considering is, whether the change of remedy was detrimental to such a degree as to amount to an impairment of the plaintiff's right; and, as this record discloses that the sale left a portion of the plaintiff's judgment unpaid, it may be fairly argued that this provision of the act does deprive the plaintiff of a right inherent in her contract. When we are asked to put this case within the rule of those cases in which we have held that it is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired, we are bound to consider the entire scheme of the new statute, and to have regard to its probable effect on the rights of the parties.

It is contended that the right to redeem granted by the new statute only operates on the purchaser and not on the mortgagee as such. This very argument was foreseen and disposed of in *Bronson* v. *Kinzie,* where this court said:

"It, the new act, declares that although the mortgaged premises should be sold under the decree, yet that the equitable estate of the mortgagor shall not be extinguished, but

shall continue for twelve months after the sale; and it more-over gives a new and like estate to the judgment creditors to continue for fifteen months. If such rights may be added to the original contract by subsequent legislation, it would be difficult to say at what point they must stop. An equitable estate in the premises may, in like manner, be conferred upon others; and the right to redeem may be so prolonged as to deprive the mortgagee of the benefit of his security by rendering the property unsalable for anything like its value. This law gives to the mortgagor and to the judgment creditors (meaning creditors other than the mortgagee) an equitable estate in the premises, which neither of them would have been entitled to under the original contract; and these new interests are directly and materially in conflict with those which the mortgagee acquired when the mortgage was made. Any such modification of a contract by subsequent legislation, against the consent of one of the parties, unquestionably impairs its obligations, and is prohibited by the Constitution."

*The judgment of the Supreme Court of Kansas is reversed and the cause remanded to that court with directions for further proceedings not inconsistent with this opinion.*