No. 33,409

THE MOTOR EQUIPMENT COMPANY, *Appellant*, v. JULIA M. WINTERS, JASPER W. HARRISON and MABEL HARRISON, His Wife, *Appellees*.

(69 P. 2d 23)

Opinion filed June 12, 1937.

*W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes* and *Roetzel Jochems,* all of Wichita, for the appellant.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action was brought to foreclose a second mortgage on real estate after a first mortgage had been foreclosed without joining the second mortgagee as party defendant. Judgment was for defendants, and plaintiff appeals. The action was tried on an agreed statement of facts. The portions thereof pertinent to this appeal may be briefly stated as follows:

Defendant Julia M. Winters defaulted below. Defendants, Jasper W. Harrison and Mabel Harrison, his wife, are the appellees. Julia M. Winters was the owner of certain real estate in Sedgwick county, and on October 1, 1930, executed and delivered a note and first mortgage thereon to the Equitable Life Assurance Society. On November 8, 1933, she executed and delivered a second mortgage to plaintiff and one McLaughlin, which was duly recorded. The interest of McLaughlin was assigned to plaintiff and plaintiff became

the owner of the entire second mortgage. The second mortgage is the subject of this appeal. The "Equitable" filed its foreclosure action on February 11, 1935, but through an error on the part of the abstracter in omitting the second mortgage from the abstract, it had no actual knowledge of that mortgage and did not make the plaintiff in the present action a party to its foreclosure suit. On March 30, 1935, "The Equitable" obtained a judgment of foreclosure, had the property sold and purchased it at sheriff's sale on May 1, 1935. "The Equitable" received a certificate of purchase. In March of 1936 Julia M. Winters sold her interest in the property to defendant Jasper W. Harrison. The abstract was extended to March 31, 1936, by a bonded abstracter, but again the second mortgage was omitted from the abstract and Harrison had no actual knowledge of the mortgage. Before the owner's twelve months' period of exclusive redemption expired, and on April 6, 1936, appellee Harrison redeemed. The plaintiff in the instant case had no actual notice or knowledge of the pendency of the foreclosure suit, judgment, sale, confirmation of sale, decree fixing the period of redemption, the issuance of certificate of purchase, the purchase by Harrison or the redemption by him until on or about May 1, 1936.

The ruling of the trial court denied the foreclosure of the second mortgage. Appellees contend G. S. 1935, 60-3460, and the decisions of this court construing that statute, require affirmance of the judgment. The decisions of this court relied upon mainly by appellees are *McFall v. Ford,* 133 Kan. 593, 1 P. 2d 273; *Union Central Life Ins. Co. v. Reser,* 134 Kan. 876, 8 P. 2d 366; *Frazier v. Ford,* 138 Kan. 661, 2 P. 2d 267; *Prudential Ins. Co. v. Foster,* 139 Kan. 112, 30 P. 2d 104. G. S. 1935, 60-3460, provides:

"Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or *lien inferior thereto,* and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for." (Italics inserted.)

Did the legislature intend to bar an inferior lien, a second unadjudicated mortgage, from being foreclosed where the second mortgage was of record when the first mortgage-foreclosure action was filed and where the second mortgagee was not made a party defendant and had no actual notice or knowledge of any part of the proceeding whatsoever until after redemption by the owner, and thus enable the owner to redeem within the twelve months' period of ex-

clusive redemption prescribed by G. S. 1935, 60-3440, and thereby preclude enforcement of the second mortgage? We think not.

This court by unanimous decision in *Stacey v. Tucker*, 123 Kan. 137, 254 Pac. 339, declared that in its opinion the legislature contemplated by the use of the words "lien inferior thereto," not merely liens but "liens adjudicated as such." To that interpretation we adhere in the instant case. The lien in the present case was not an adjudicated lien and we hold was not barred by the provisions of G. S. 1935, 60-3460, or by other pertinent statutes, all of which were fully considered in both the majority and dissenting opinions in the McFall case. The first paragraph of the opinion in the Stacey case clearly indicates this court had before it then the identical question presented now, and at that time understood exactly what was confronting it. In disposing of the question it ruled:

"Where a senior mortgagee brought suit, foreclosed his mortgage and purchased the property at sheriff's sale, not having made a junior mortgagee a party: Held, (a) the junior mortgagee's rights were not affected by the proceedings; (b) the junior mortgagee was not barred for failure to redeem the land, and an action by the senior mortgagee afterwards to quiet title against the junior mortgagee was of no avail." (Syl. ¶ 1.)

Appellees insist the opinion in the Stacey case was overruled by the McFall case. The statement is too broad. True, the McFall case was concerned with an inferior lien, but it was an adjudicated lien. Moreover, it was adjudicated in an action to which Mrs. Thomas, the holder of the inferior lien, was made a party defendant and was adjudicated on the same day the plaintiff in that case, the holder of three mortgages, took foreclosure judgment in all three of its actions. Mrs. Thomas did not have a mortgage on the land involved in either of the other two cases and in them was of course not made a party defendant. On the sale of the land on which she did have a second mortgage, she realized nothing. By virtue of G. S. 1935, 60-3126, her personal judgment against the owner of the lands, however, became a lien on the lands of the judgment debtor, as of the first day of the term on which it was rendered. That lien, of course, was inferior to plaintiff's mortgage liens. It was this inferior adjudicated lien of Mrs. Thomas' with which the McFall case was concerned. It was held the lands of the debtor were not again liable to sale to satisfy her adjudicated lien. Even on an adjudicated lien the McFall case was ruled by a four-to-three decision.

In frankness, it must be conceded the majority opinion in the Mc-Fall case criticized the distinction as to adjudicated and unadjudicated liens which was made in the Stacey case. Is it, however, accurate to say the McFall opinion overruled the decision in the Stacey case? It is not. The McFall opinion, as will presently appear, ruled that the decision in the Stacey case was not a matter of concern in the McFall case for the reason the latter involved adjudicated liens and the former an unadjudicated lien. While a bare majority was willing to bar an adjudicated lien that same majority did not overrule the Stacey case involving an unadjudicated lien. Just to keep the record straight, let us turn to the concluding paragraph of the discussion of the Stacey case, and see what really was said concerning the Stacey case by the majority in the McFall opinion. It reads:

"The decision in the Stacey case involved merely an *undetermined* claim of second-mortgage lien, which might or might not be a valid claim. It did not involve a *finally adjudicated* claim which was indisputably a lien by virtue of court judgment and statute. *The soundness of the decision in the Stacey case as a determination of the specific controversy in that case, is not a matter of present concern.*" (p. 598.) (Italics inserted.)

Here, then, is the factual distinction between the Stacey and McFall cases expressly emphasized by the majority opinion in the McFall case. The majority opinion clearly pointed out that the decision in the Stacey case was therefore of no concern in the McFall case. That was an accurate statement. There was therefore no occasion to overrule the decision in the Stacey case and it was not overruled. The majority and dissenting opinions in the McFall case cover about forty-five pages of the Kansas reports. Both opinions clearly indicate a careful review of the entire subject. We do not deem it necessary or advisable to again cover this entire field.

We shall observe briefly the nature of the liens involved in cases relied upon by appellee and decided subsequent to the McFall case. The Union Central Life Ins. Company case was concerned with an inferior lien which had been adjudicated. In the Frazier case the junior mortgagee was made a party in the first mortgage-foreclosure action. Her mortgage was foreclosed as a second lien and hence she could have protected her rights by bidding at the sale. That is not this case. In the Prudential case, also relied upon by appellee, the inferior lien was in fact reduced to judgment during the redemption period. The court extended the application of the McFall opinion to cover that situation.

We concede that G. S. 1935, 60-3460, literally construed, does not require an inferior lien to have been adjudicated. We are not obliged, however, to adhere to a literal construction, when in our judgment such construction is not in harmony with the intent of the lawmakers and is inimical to the sound and well-established doctrine that no man shall be deprived of his property without notice and an opportunity to be heard. That appellant in the instant case could not have protected itself without its lien having been adjudicated is evident. Appellees contend that appellant had a right to redeem. That right was not absolute, but solely contingent upon the failure of the owner to redeem within the twelve months' period during which he had the exclusive right to redeem. (G. S. 1935, 60-3440.) The owner did not fail to redeem. He exercised his exclusive right. It is therefore clear appellant's lien was not protected by virtue of the redemption law. Appellees insist the redemption law was in existence when the second mortgage was executed and therefore was a part of appellant's mortgage. That may be conceded, but what does that have to do with the necessity of having the inferior lien adjudicated in order to enable appellant to protect its lien? Nothing. Appellees insist appellant had a right to bid at the sale whether its lien was adjudicated or not. Oh, yes, and so did any other stranger to the action. We are not concerned here with a mere right to bid. We are concerned with appellant's right to bid under such circumstances as would protect a just and valid lien. In order to protect that lien by a bid at the sale it was imperative the lien should be reduced to judgment and its foreclosure ordered by judicial decree. The property could not have been sold to also satisfy appellant's second mortgage unless a judgment so provided. G. S. 1935, 60-3107, reads:

"In actions to enforce a mortgage, . . . no real estate shall be sold for the payment of any money, . . . except in pursuance of a judgment of a court of competent jurisdiction ordering such sale."

The judgment of first mortgage foreclosure in the instant case could not have provided for the foreclosure of appellant's mortgage as appellant was not a party to that suit. Appellant not having been made a party to the suit and no foreclosure judgment having been rendered on its second mortgage, how could it have protected its lien by bidding at the sale? Its bid would have been that of a complete stranger to the action and it would have been entitled to no credit

on its bid by virtue of its mortgage. Let us assume appellant had bid and paid the full amount of plaintiff's judgment, interest, costs and taxes, plus the amount of its own mortgage. The amount of plaintiff's judgment would have been paid to plaintiff and the surplus after payment of costs and taxes would have been paid to the execution debtor. In *Pool v. Gates*, 119 Kan. 621, 240 Pac. 580, it was held:

"In the confirmation of a judicial sale in foreclosure of a mortgage on real property, the surplus proceeds of the sale, after paying taxes upon the real property, the costs of the foreclosure proceeding and the judgment in the foreclosure decree, should be paid to the defendant in execution." (Syl.)

In the event redemption was made by the owner within twelve months, as it was made, the amount of appellant's bid would have been refunded to appellant with interest and its second mortgage in fact would nevertheless have remained unpaid. It is therefore clear a literal interpretation of G. S. 1935, 60-3460, would result in effectively destroying all rights under the second mortgage insofar as the security was concerned. Under such a doctrine an owner could place a small short-time first mortgage and a large long-term second mortgage on his property, the first mortgage could be foreclosed without making the second mortgagee a party defendant, although by virtue of G. S. 1935, 67-222, plaintiff had notice of the recorded mortgage or even though plaintiff had actual knowledge of such second mortgage. The owner could exercise his exclusive right of redemption within twelve months, as was done in the instant case, and the inferior lienholder would be left entirely without recourse. Such a result, in our opinion, was never contemplated by the framers of the law.

On the other hand, had appellant been made a party to the action as it should have been, its mortgage would have been adjudicated, it would have been entitled to have the amount of its judgment credited on its bid, and in the event of redemption its lien would have been paid. That, we think, was the intention of the legislature. That is consonant with fair dealing. That requires the property to stand good only for the amount it was pledged to secure. It gives to a junior lienholder only that to which he is justly entitled and prevents unjust enrichment of the owner at the expense of a junior lienholder.

In determining legislative intent it is essential that we consider statutes in existence when the statutes involved were enacted. In

so doing we cannot overlook a statute which makes it obligatory on the trial court itself to bring in additional parties when their absence would prejudice their rights. G. S. 1935, 60-416, reads:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties the court or judge must order them to be brought in."

As indicated, appellant would have been prejudiced in its rights unless its lien had been adjudicated. We must and do assume the legislature had the above statute in mind when G. S. 1935, 60-3460, was enacted, and that it intended inferior liens should become adjudicated in order that the rights thereunder might be properly protected rather than prejudiced. In the Stacey case it was said:

"A junior mortgagee is not a necessary party to the foreclosure of a mortgage so far as the jurisdiction of the court to render a decree of foreclosure binding upon all the parties to the proceeding is concerned. He is, however, a necessary party in order to foreclose and bar any right of redemption he has in the property by virtue of his lien. Unless made a party, his rights ordinarily are not affected by the decree of foreclosure. The particular point at issue appears not to have been heretofore passed upon by this court. However, a trend of opinion has been indicated." (p. 139.) (See authorities cited.)

The rule announced in the Stacey case was recognized by the late Judge McDermott in the case of *Garber v. Bankers Mortgage Co.,* 27 F. 2d 609, where it was said:

"Reference is also made to section 60-3460, which shortly provides that real property, once sold on execution, shall not again be liable for sale for any balance due on the judgment, or for any lien inferior thereto. This section has been construed to only bar creditors who were parties to the suit. (*Stacey v. Tucker,* 123 Kan. 137, 254 Pac. 339.)" (p. 610.)

Furthermore, the lawyers in the legislature of this state, and there have been many, knew full well when G. S. 1935, 60-3460, was enacted, that it was the universal practice of good lawyers to make all record lienholders and others claiming any right, title or interest in the land, parties defendant in order that all rights and interests might be determined in a single action. No doubt that would have been done in the instant case except for the omission of the mortgage from the abstract. The effect of that omission presents a controversy between the bonded abstracter and the party or parties whom the abstracter represented. Certainly appellant is not to be penalized for the conduct of the abstracter. The long-established rule that parties whose rights are affected by a foreclosure action

should be made parties defendant has been frequently stated. In *Bank v. Grisham,* 105 Kan. 460, 185 Pac. 54, it was held:

"In a foreclosure suit, where parties defendant are lawfully litigating their rights, which are subordinate to those of the plaintiff mortgagee, and the proper determination of those subordinate rights necessitates the presence of additional parties, the trial court or judge should order such other parties to be brought in, and the rights or pretensions of such additional parties in the property in question may properly be adjudicated in the same action." (Syl. ¶ 7.) (See, also, *Ruf v. Grimes,* 104 Kan. 335, 179 Pac. 378.)

It is also apparent the present interpretation of legislative intent is not only in keeping with long-established procedure of mortgage foreclosure in this state, but is in complete harmony with the well-grounded doctrine so frequently announced, that no man shall be deprived of his property without due process of law. In *Wichita Council v. Security Benefit Ass'n,* 138 Kan. 841, 28 P. 2d 976, it was said:

"Generally speaking, both our federal (5th and 14th amendments) and state (bill of rights, § 18) constitutions provide for due process of law. Whatever may be said of the exact definitions of that term, said to be synonymous with 'the law of the land' (12 C. J. 1189), it is well settled that its 'essential elements . . . *are notice, and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case.*' (6 R. C. L. 446.) In 12 C. J. 1190 it is said: '. . . due process of law means a law which hears before it condemns, which proceeds on inquiry, and renders judgment only after trial; . . .' And see cases there cited and those collected, American Digest System, Constitutional Law, section 251." (p. 847.) (Italics inserted.)

The first mortgage-foreclosure proceeding adapted to the nature of the lien interests required the presence of the holder of the inferior lien. By the very nature of the inferior lien it could be protected with certainty only by its holder purchasing the property at sheriff's sale. In the very nature of the first mortgage-foreclosure action, no prior adjudication of appellant's inferior lien having been had, an adjudication of that lien was essential to its protection under a bid at sheriff's sale. Upon what reasonable basis can it then be said the legislature intended to bar a resale of the land on unadjudicated inferior liens? We conceive of none. To hold otherwise is to decide that the legislature, by G. S. 1935, 60-3460, intended to destroy substantial rights of holders of inferior liens. The pertinent statutes, when considered with the well-known practice in mortgage foreclosures in this state, cannot logically be construed to evidence such a ruthless and destructive intent. We think the legis-

lature intended to bar the resale of land under an inferior lien only when that lien had been adjudicated and the holder of that judgment lien had neglected to protect it when he had an opportunity to do so at a previous sale.

Appellees insist it was appellant's duty to maintain a diligent watch for the filing of foreclosure proceedings under the first mortgage. They contend in the case of *Scott v. Paisley*, 271 U. S. 632, 46 S. Ct. 591, 70 L. Ed 1123, it was in effect decided that failure to give notice of the first mortgage foreclosure did not deprive appellant of property without due process of law. The decision is based on a Georgia statute, which does not have the slightest resemblance to either the law of mortgages or mortgage foreclosures in this state. Under the law of Georgia plaintiff, who complained of want of notice, had purchased the land subject to a "security deed." The court said:

"The case is in a narrow compass. That, under the Georgia decisions, a sale made under a prior security deed in conformity to the provisions of § 6307, devests a purchaser from the grantor of all rights in the land, is conceded. The contention that this section is unconstitutional, as applied to such a purchaser, rests, in its last analysis, upon the claim that he is entitled, as a matter of right, in accordance with settled usage and established principles of law, to notice of a proceeding to sell the land under the prior security deed and opportunity to make defense therein. We cannot sustain this contention.

"Here the holder of the secured debt was also the holder of the legal title to the property by which it was secured. In such case, at least, § 6037 authorizes the holder of the secured debt, by following the procedure outlined by the statute, to bring the property to sale in satisfaction of the debt. Its effect is no more than if it conferred upon the holder of the secured debt a statutory power of sale, which may be treated as equivalent, insofar as the constitutional question is concerned, to an express power of sale in a mortgage or trust deed." (p. 1125.)

It will be noted the mortgagee in the Scott case was also, under the law of Georgia, the holder of the legal title with express power to sell. Plaintiff purchased subject to that power. In this state a real-estate mortgage transfers no legal title. That title remains in the mortgagor. In this state a mortgage is merely security for a debt. Irrespective of what it may be called, if it is in fact security for a debt, it is a mortgage and nothing else. (*Benson v. Rosebaugh*, 128 Kan. 357, 278 Pac. 41; *Robinson-Patterson Coal Co. v. Morgan*, 130 Kan. 679, 288 Pac. 555.) Nor does the legal title pass at sheriff's sale. Only the equitable title passes on confirmation of sale. The legal title does not pass until the sheriff's deed is executed. (*Cham-*

*bers v. Rose,* 111 Kan. 22, 206 Pac. 336.) The mortgage, being only security for the debt, must be foreclosed by judicial proceedings as provided by law. Others who also have a contractual and statutory lien on the property and whose rights would be prejudiced by not having their liens adjudicated are, as we have herein previously indicated, entitled by statute to be made parties defendant in such foreclosure proceedings. We do not regard decisions in point on the question of notice from jurisdictions where the mortgagee is the holder of the legal title with power to convey that title and where the purchaser acquires his interest from the grantor subject to such a trust deed.

On the point of notice appellees again refer to the McFall case. We are reminded it was there held the junior lienholder was required to be diligent in watching for proceedings to enforce the superior lien if she (Mrs. Thomas) desired to protect her own lien. We hold that appellant, being the holder of an unadjudicated inferior lien, was entitled to legal notice of the pendency of the foreclosure action and that without such notice its right to enforce its lien was not barred. Any other rule would require a junior lienholder to keep in constant touch with the office of the clerk of the district court in order to ascertain whether a foreclosure action had been filed. In view of statutes previously discussed herein and in view of the general practice of mortgage foreclosures in this state, it is much more reasonable to assume the legislature intended the holder of an inferior lien should be made a party defendant to a foreclosure action when such lien was properly recorded as provided by law, and especially does that appear to be true in view of a statute which expressly provides that the recording of such a lien imparts notice to all persons of the contents thereof. (G. S. 1935, 67-222.)

Appellees insist the constitutionality of G. S. 1935, 60-3460, was determined in *Barnitz v. Beverly,* 163 U. S. 118, 16 S. Ct. 1042, 41 L. Ed. 93, and that this fact was recognized by this court in the concurring opinion of Mr. Justice Dawson in the case of *Kansas City Life Ins. Co. v. Anthony,* 142 Kan. 670, 52 P. 2d 1208. In view of our interpretation of G. S. 1935, 60-3460, as to legislative intent, it becomes unnecessary to deal with constitutional questions which would be involved under a contrary construction. Appellees, however, are completely in error in their view that the Barnitz case is authority for the contention that no notice to appellants of the pendency of the first mortgage-foreclosure proceedings was neces-

sary, or that it was unnecessary appellant's lien should have been otherwise adjudicated. In the Barnitz case the supreme court of the United States held:

"A state statute declaring that real estate sold on foreclosure of a mortgage shall not again be liable for sale, for any balance due upon the judgment or decree under which it was sold, *impairs the obligation of the contract of a pre-existing mortgage.*" (Headnote, ¶ 3.) (Italics inserted.)

As to constitutionality this statute was involved in the Barnitz case only on the question of impairment of obligations of contract. The due process clause was in no way involved. That case was before us on two occasions, *Beverly v. Barnitz*, 55 Kan. 451, 40 Pac. 325, and 55 Kan. 466, 42 Pac. 725. The mortgage was executed prior to the enactment of G. S. 1935, 60-3460. The only constitutional question decided by the supreme court of the United States was that the statute was invalid as to its retroactive aspect. Mr. Justice Dawson in his concurring opinion in the Anthony case, which dealt with our moratorium law, referred to that principle and said:

"I have no doubt that the state of Kansas enjoys such attributes of sovereignty as authorize it to enact valid moratorium legislation. Our statute of 1893 (R. S. 60-3439), which granted to a judgment debtor in a mortgage-foreclosure suit a period of eighteen months in which to redeem his property from sale in foreclosure is an excellent example of that sort of legislation. And its constitutionality is unassailable in its prospective application, although its retrospective aspects were stricken down by the United States supreme court in *Barnitz v. Beverly*, 163 U. S. 118, 41 L. Ed. 93, 16 S. Ct. 1042." (p. 683.)

We fail to conceive how any decision in the Barnitz cases or comment thereon by Mr. Justice Dawson in any manner touched the question at issue in this lawsuit. In the Barnitz cases there was no occasion for a discussion of the principle of due process. In them there was no absence of notice to parties and no decree was rendered without the parties having had their day in court.

We are mindful of the fact that language employed in some of our decisions has not left our interpretation of G. S. 1935, 60-3460, entirely free from doubt. It is more important our interpretation should be clear than that it should meet with universal agreement. In view of this fact language heretofore employed, inconsistent with the distinction herein made as to adjudicated and unadjudicated liens, is hereby overruled.

In the instant case we are not called upon to determine whether appellant is entitled to now enforce its inferior lien as a first lien, and on that subject we express no opinion. It is sufficient to say ap-

pellant does not ask to be permitted to so enforce its lien. It only asks it be given the same rights now which it would have had to protect its lien by a bid at the sale, had its lien then been adjudicated. We conclude, therefore, that justice will be best subserved by reversing this judgment and remanding the cause to the trial court for further proceedings not inconsistent with the views herein expressed. It is so ordered.