

Decided August 2, 1989

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

INOCENCIA T. APATANG,            )     CIVIL ACTION NO. 89-570
Administratrix of the            )
estate of Isidro Sablan          )
Tudela,                          )
                                 )
            Plaintiff,           )     ORDER GRANTING DEFENDANT'S
                                 )     MOTION FOR SUMMARY JUDGMENT
                                 )     AND DENYING PLAINTIFF'S
        vs.                      )     MOTION FOR SUMMARY JUDGMENT
                                 )
MARIANAS PUBLIC LAND             )
CORPORATION,                     )
                                 )
            Defendant.           )
                                 )

## THE FACTS

On February 14, 1952 a Determination of Ownership was issued finding Isidro S. Tudela to be the owner of certain real property in As Gonno consisting of Lots 326, 327, 328, 343 and a portion of Lot 319 (the "As Gonno property"). At the time of this determination possession was denied Tudela as the property was situated in a military area.

On July 24, 1954, Agreement to Exchange Lands No. 222 (E.A. 222) was executed between Tudela and the Government of the Trust Territory of the Pacific Islands (TTPI) whereby Tudela agreed to exchange his property in As Gonno for a

**937**

portion of Lot 441 in Papago (the "Papago property"). This agreement describes the Garapan property owned by Tudela as "containing an area of 8.1 hectares, more or less" and the parcel to be exchanged in Papago as "containing an area of 10.5 hectares, more or less." Each of these properties was described in terms of the lots bordering them.

On April 17, 1956, the TTPI granted Tudela the Papago property which by this time had been surveyed with a metes and bounds description. The Papago property was described as "containing an area of 96,905.0 square meters, more or less." Thereafter, on April 25, 1956 Tudela quitclaimed the As Gonno property to the TTPI.

Subsequently, in 1959 Tudela transferred the Papago property for valuable consideration to another person.

Some 24 years after the exchange with the government took place, various other recipients of property from the Trust Territory Government land exchange program began to question the fairness of the exchanges. A number of complaints were lodged with the Marianas Public Land Corporation (MPLC), the successor to the Trust Territory Government, which responded with a decision to authorize its staff to "resolve the exchange agreement whose land exchanges were not enough on a case-by-case basis...." This action of the board of directors is evidenced by the October 14, 1980 minutes. (See defendant's Exhibit A for defendant's summary judgment motion).

**938**

From 1980 to 1987, MPLC apparently deeded, in fee simple, various parcels of public land to those persons which it found did not receive enough land in the exchanges.[1/]

The matter of authorizing MPLC to exchange land was brought to the attention of the legislature which passed P.L. 5-33 (2 CMC §4141 et seq) in 1987. Succinctly put, this law, inter alia, authorized MPLC to transfer a freehold interest in public land to recipients of the Trust Territory land exchanges "...in which the full area of public land agreed upon was not conveyed to the landowners....". Authority for this was ostensibly derived from Article XI, Section 5(b) of the

_____

[1/] According to plaintiff's memorandum in opposition to defendant's summary judgment motion, several landowners, including members of the Board of Directors and its staff, were "compensated" for asserted short exchanges. If such is true, grave concern is raised as to the propriety of such transfers of public land which MPLC holds in trust for all the people of the Commonwealth. Commonwealth Constitution Article XI Section 1; MPLT v. MPLC, 1 CR 967, 969-70 (CTC 1984). Additionally, Article XI Section 4(c) mandates that the directors of the Marianas Public Land Corporation shall be held to "strict standards of fiduciary care". The minutes of the board's action authorizing the "compensation" program does not state the authority by which MPLC conveyed public land to prior exchange recipients.

Constitution.2/

## THE PLAINTIFF'S ACTION

On May 19, 1989, plaintiff, as the administratrix of the estate of Isidro S. Tudela, filed a complaint against the defendant, as successor in interest to the TTPI, alleging that Tudela was "short changed" in the 1956 land exchange. This allegation is based upon the fact that E.A. 222 indicated that the Papago property contained 10.5 hectares "more or less" and in the actual exchange of lands Tudela only received 9.69 hectares "more or less." Subsequently, each side moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

A summary judgment will be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Com.R.Civ.Pro. Rule 56;

---

2/
Section 5(b) reads: The corporation may not transfer a freehold interest in public lands for the twenty years after the effective date of this Constitution, except for homesteads as provided under Section 5(a), or for use for a public purpose by another agency of government, or for land exchanges to accomplish a public purpose as authorized by law. (Emphasis added)

In P.L. 5-33, the legislature defined "public purpose" to include the "satisfaction" of any short exchange during the Trust Territory Administration. MPLC now questions the authority of the legislature (and certainly the 1980 Board of Directors) to give its approval to the "compensation" program.

_Anderson v. Liberty Lobby, Inc._, 106 S.Ct. 2050, 2510, 91 L.Ed.2d 202 (1986). To withstand a motion for summary judgment, the non-moving party must show that there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. Id. at 2511. In this case, neither party claims there are remaining issues of fact. The matter is ripe for summary judgment treatment.

## THE LAND EXCHANGE

The undisputed facts indicate that E.A. 222 represented that the Papago property contained "an area of 10.5 hectares, more or less." When dealing with real property, the words "more or less" refer to the approximate area of the parcel. _Thorp v. Smith_, 344 F2d 452, 454 (3rd Cir. 1965). Thus, it cannot be said that E.A. 222 obligated the TTPI to convey exactly 10.5 hectares to Tudela upon exchange. This is further buttressed by the language of paragraph 3 of E.A. 222 which states:

"3. It is understood that the areas shown above for (the As Gonno property and the Papago property) are estimates only, and may be modified or revised by subsequent survey of said parcels. It is further understood that any such modifications or revisions shall not affect the terms and conditions of this Agreement."

Thus, Tudela knew when he signed E.A. 222 in 1954 that the Papago property might not contain exactly 10.5 hectares and that this figure was only an estimate.

When the exchange contemplated in E.A. 222 was accomplished in 1956 the grant to Tudela specifically stated

**941**

that the Papago property contained 96,905.0 square meters. Yet at no time during his lifetime did Tudela make a claim for any deficiency. In signing E.A. 222 Tudela specifically assumed the risk that the Papago property might actually contain less than 10.5 hectares. If Tudela had filed suit against the Trust Territory Government, or any successor, for the additional 8,095 square meters, his claim would have faced insurmountable hurdles.

The very wording of the land exchange agreement, the acceptance of the surveyed parcel specifically delineated as 96,905 square meters, the subsequent resale of the property and the failure to file any claim before he died (June 17, 1965), would have defeated any claim by Tudela. Certainly the estate is in a no better position.

It is the conclusion of this court that Tudela got what he bargained for and agreed to and the exchange agreement is determinative. The estate acquires no rights pursuant to P.L. 5-33.

## DEFENDANT'S MORAL OBLIGATION

In her cross-motion for summary judgment plaintiff contends that defendant owes a moral obligation to the Tudela estate to compensate it for the difference between the 10.5 hectares figure in E.A. 222 and the 9.69 hectares actually conveyed. Plaintiff bases her moral obligation claim on the previous implementation of compensating short exchange claimants pursuant to defendant's 1980 resolution, citing

**942**

United States v. Realty Co., 163 US 127, 16 S.Ct. 1120 (1896) and Koike v. Board of Water Supply, 352 P.2d 846 (1960).

Each of the two cases cited by plaintiff found that a moral obligation may exist pursuant to legislation. In Realty Co., the Supreme Court found an obligation on the part of the government to pay sugar bounties even after the repeal of the legislation authorizing such bounties where sugar producers had relied in good faith upon the former act. Likewise, in Koike the Supreme Court of Hawaii found that a legislative appropriation to compensate Koike for property damages was not an abuse of legislative discretion. In each of these cases the government's moral obligation to provide compensation arose out of specific legislation. Thus, no "moral obligation" arose out of the 1980 resolution of MPLC's Board of Directors.

In this case, the legislation that the court must look to for guidance as to defendant's moral obligation is Public Law 5-33. This legislation provides for transfers of public land where the full area agreed upon was not conveyed. Plaintiff contends that defendant owes the Tudela estate a moral obligation pursuant to P.L. 5-33 as defendant pursued negotiations with the estate after that legislation was enacted. However, as previously stated, there is no moral obligation here as Tudela got everything he bargained for. Nothing more is authorized.

943

## ESTOPPEL CLAIM

Plaintiff next maintains that defendant should be estopped from claiming that the exchange with Tudela was adequate. Plaintiff's contention is that defendant conducted negotiations with plaintiff regarding a land exchange and other persons have already been compensated by defendant. Therefore, it is argued, the defendant is estopped from refusing to fulfill its "promise" to compensate the Tudela estate with additional public land.

Courts will invoke estoppel against the government with great reluctance. Emery v. Secretary of Labor, 744 F.2d 1411, 1416 (10th Cir. 1984). Although estoppel may be invoked against a government in the proper circumstances, such circumstances are few and far between. Furey v. City of Sacramento, 592 F. Supp. 463, 473, affirmed 780 F.2d 1448 (9th Cir. 1986).

Estoppel against the government will apply only where the government's wrongful conduct will cause a serious injustice and the public's interest will not suffer undue damage by imposition of liability. Mukherjee v. I.N.S., 793 F.2d 1006, 1008-09 (9th Cir. 1986). Those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to law. Heckler v. Community Health Services, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225 (1984).

In this case, the public's interest will clearly suffer if defendant is compelled to transfer public land which it

**944**

specifically holds in trust for the people of the Commonwealth in order to provide plaintiff with additional land. The court is in complete agreement with plaintiff's assertion that the government must deal fairly and honestly with its citizens. It is for this very reason that defendant cannot be estopped from abdicating its duty to supervise public lands for the benefit of all the citizens of the CNMI. The lands entrusted to defendant are public lands and as such belong to the general public not to defendant's agents to deal with as they see fit. Both the defendant and this court are bound by the laws of the Commonwealth. The fact that defendant may have compensated other landowners, including its own Board of Directors and staff, does not estop defendant from applying the law in this case. The previous compensation cases referred to by plaintiff are not before this court and the court is unable to determine under what circumstances they occurred. However, in the case at bar, Tudela got what he bargained for and the defendant has no authority from the legislature to convey anything else.

Based on the foregoing, defendant's motion for summary judgment is hereby GRANTED and plaintiff's motion for summary judgment is DENIED.

Dated at Saipan, MP, this 2nd day of August, 1989.

_____
Robert A. Hefner, Presiding Judge

945