[Civ. No. 2133. Fourth Appellate District.—July 11, 1938.]

OSCAR BIRKHOFER et al., Respondents, v. THEODORE KRUMM, Appellant.

514

Theo. G. Krumm, Martin J. Coughlin and R. Bruce Findlay for Appellant.

A. V. Falcone, as *Amicus Curiae*, on Behalf of Appellant.

U. F. Lewis and Ernest Clewe for Respondents.

HAINES, J., *pro tem.*—This is not the first time that the transactions here involved have been, in some of their aspects, before this court. (See *Birkhofer* v. *Krumm,* 4 Cal. App. (2d) 43 [40 Pac. (2d) 553]; *Birkhofer* v. *Krumm,* 23 Cal. App. (2d) 269 [72 Pac. (2d) 899]; *Birkhofer* v. *Krumm,* 24 Cal. App. (2d) 372 [75 Pac. (2d) 82].)

The earlier phases of the dealings to be considered are recited in the first of the above-mentioned opinions but since in the present appeal they are complicated by other matters it seems advisable for the sake of clarity to state the case *de novo.*

The amended complaint in the present action alleges the execution by one W. E. Grigsby and one Florence Gill Grigsby to one Y. J. Attwood of a promissory note, together with a deed of trust made to secure it, a copy of which deed of trust, affecting certain land in San Bernardino County and certain water company stock, as well as a copy of a note included in the deed of trust, are annexed to the complaint as an exhibit. The note bears date March 27, 1928, and is in the principal sum of $48,000, payable in eight annual instalments of $5,000 each on or before the 27th day of March each year beginning with March 27, 1929, and one instalment of $8,000 on or before March 27, 1937, with interest on unpaid principal at 7 per cent per annum, payable semiannually. The note contained the ordinary acceleration clause. It is further alleged that on April 14, 1928, the Grigsbys conveyed the property affected by the deed of trust to defendant, Theodore Krumm, now appellant, by a conveyance, a copy of which is also annexed to the pleading, subject to the indebtedness secured by the deed of trust, which Krumm assumed and agreed to pay. It is further alleged that on or about July 8, 1929, Attwood assigned his rights under the note and deed of trust to the plaintiff (now respondent) Murphy to secure payment of a note from Attwood to Murphy on which there remained an unpaid balance of more than

$40,000, and that on or about June 9, 1933, Murphy in turn executed his note for $40,000 to plaintiffs and respondents Birkhofer and to secure its payment assigned to them his rights in the Grigsby note and deed of trust. It is further alleged that prior to January 31, 1934, breaches in the Grigsby-Krumm obligation occurred in the following particulars: That the interest which became due on March 27, 1933, amounting to $1,067.50, was not paid; that a like sum of $1,067.50 of interest which fell due in September, 1933, was not paid; that $2,500 which constituted one-half of the $5,000 instalment of principal which fell due on March 27, 1932, was not paid; also that on January 31, 1934, there remained unpaid the $5,000 instalment of principal which fell due on March 27, 1933. It is further stated that the Birkhofers on January 31, 1934, recorded in the recorder's office of San Bernardino County a notice of default and election to sell the property affected by the deed of trust. The complaint states that on February 4, 1934, Krumm paid on account of the instalment of interest which fell due on March 27, 1933, the sum of $1,000, and on February 22, 1934, on said interest a further $67.50 (which would be the balance of the same). The complaint goes on to allege that the Security Title Insurance and Guaranty Company, the trustee under the deed of trust on September 5, 1935, gave notice as required by section 692 of the Code of Civil Procedure, and the provisions of the deed of trust, that it would, on October 7, 1935, by reason of the defaults in the payment of the obligations secured by the deed of trust, including those mentioned in said notice of default and election to sell, proceed to sell at public auction the real and personal property which the deed of trust described, for the payment of the obligations thereby secured; that the said property was on October 7, 1935, sold accordingly for $7,500, and that after that sum had been applied to the payment of the expenses of sale, the trustee's fees and accrued interest on the note there remained of it the sum of $2,435.13 which was applied on the principal. It is alleged that in consequence of the situation so set out Krumm remains indebted to plaintiffs (now respondents) to the extent of $28,064.87, with interest from October 7, 1935.

In the second cause of action in their amended complaint the plaintiffs (respondents here) reiterate most of the allega-

tions of their first cause of action and add certain others. Thus it is alleged that prior to January 23, 1933, plaintiff (now respondent) Murphy assigned his right, title and interest in the Grigsby-Krumm note and deed of trust to the Sebastopol National Bank to secure a note theretofore executed by him to it. It is also stated that on January 23, 1933, Krumm asked of Attwood, Murphy and the bank an extension of time to March 27, 1934, for the payment of the final $2,500 of the instalment of principal which had fallen due on March 27, 1932, and for the payment of $3,000 out of the $5,000 instalment of principal which was to become due on March 27, 1933, which extension had been granted by a writing, copy of which was made an exhibit to the complaint; also that in June, 1933, Murphy paid his said note to the bank and received from it a reassignment of the Grigsby-Krumm note and deed of trust, and proceeded, on June 9, 1933, to execute the $40,000 note, already referred to, to the Birkhofers, and to make to them, as security therefor, the assignment to them already mentioned of the said Grigsby-Krumm note and of his interest in the said deed of trust securing it.

Judgment against Krumm is asked for a deficiency of $28,064.87, with interest from October 7, 1935, and costs of collection as provided for in the deed of trust.

The answer undertakes to deny nearly everything which the amended complaint alleges and particularly the defaults therein set out, as well as the giving by the Security Title Insurance and Guaranty Company of the notice of sale ''in the manner required in section 692 of the Code of Civil Procedure of the state of California and by the terms and conditions of the said deed of trust''. It is, however, specifically stated that each of the $5,000 instalments of principal due on March 27th, of the respective years 1929, 1930 and 1931, was paid; that a further $2,500 of principal has been paid, as well as all interest that had fallen due up to and including that accrued on September 27, 1932. The payments of $1,000 on February 4, 1934, and $67.50 on February 22, 1934, are also specifically admitted. Other matters are set up by way of separate defenses, some only of which require mention. In one of these separate defenses as to each cause of action it is stated that the Grigsby note and deed of trust was given for a balance of the purchase

price of the real property described in the latter and it is claimed that by reason of section 580b, Code of Civil Procedure, no deficiency judgment may, after sale under the deed of trust, be rendered.

In another defense it is alleged that subject to the pledge to Murphy and Murphy's pledge to the Birkhofers, Attwood was the owner of the note and deed of trust, and it is claimed that a conspiracy existed between the plaintiffs (respondents) and Attwood that the latter should bid in the property described in the deed of trust at an inadequate price in order to enable the respondents to obtain a larger deficiency judgment against appellant, and that Attwood accordingly bid in the property at the sale for only $7,500 although it was really worth $30,000 and although he immediately thereafter offered to resell it in behalf of the plaintiffs (respondents) and himself for $20,000.

By way of amendment to the answer defendant (appellant) Krumm alleged that on or about January 15, 1934, the plaintiffs (respondents) agreed with defendant (appellant) to compromise and settle the indebtedness evidenced by the note and deed of trust for $20,000 and that defendant (appellant) performed all the terms and conditions of the agreement and that in an action numbered 37010 in the Superior Court of San Bernardino County it had been adjudicated that he did perform all of its terms; also that as part of such agreement it was understood that defendant (appellant) would make application to the Federal Land Bank of Berkeley for money with which to carry out the settlement and that the notice of default was recorded for the sole purpose of permitting the defendant (appellant) to make the application. It is claimed that by virtue of this settlement agreement the plaintiffs (respondents) waived any default on the part of the defendant (appellant) occurring prior to January 31, 1934. It is also claimed that respondents after January 31, 1934, waived the default referred to in their filed notice. In a further separate defense contained in the amendment to his answer defendant (appellant) asserts that on January 15, 1934, the plaintiffs (respondents) represented to him that he need not pay the interest due on the note, but that it might be paid later and that they would record the notice of default "for the sole purpose of permitting the defendant to file an application with the Federal Farm Loan

Bank as aforesaid''; that accordingly and in reliance on such representation defendant (appellant) refrained from paying such interest and permitted the notice of default to be filed. It is added that on and prior to January 31, 1934, the plaintiffs waived any right they then might have to accelerate the due date of the unpaid principal of the note now sued upon.

The court, after the trial of the case, found all of the allegations of the complaint to be true (except as to the amount of the balance owing on the above-mentioned note of Attwood to Murphy, the amount of which is not determined). With respect to the answer the court found that in the action 37010 therein referred to the Birkhofers and Murphy (respondents herein), together with Attwood, were plaintiffs and Krumm (appellant herein) was defendant; that final judgment was rendered therein on the merits to the effect that said action 37010 could not be maintained upon the extension agreement mentioned in plaintiffs' (respondents') second cause of action in the instant case, but that the cause of action in said cause 37010 was not the same involved in the instant case. It was found to be true that the Grigsby note and deed of trust set up in the complaint in the instant case were given for part of the purchase price of the land described in the deed of trust and that the present action was brought to secure a deficiency judgment after the sale of the said property described therein; that of the property therein described the land was purchased at the trustee's sale for $6,500 and the water company stock for $1,000. By reference to the allegations to that effect in the original answer it was found that it is true that Attwood was at the time of the sale the owner of the note and deed of trust involved, subject to his assignment of the same to Murphy and Murphy's assignment thereof to the Birkhofers as security for the respective debts for which said assignments were made, and was the purchaser of the property at the sale, but that the allegations of a conspiracy or fraud on the part of Attwood, Murphy and the Birkhofers and of the inadequacy of the price bid for the property sold are untrue. It was further found that all of the allegations of the amendment to the answer are untrue. Judgment was given for the plaintiffs (respondents here) in accordance with their prayer,

from which, after the making and denial of a motion for a new trial, the present appeal is taken.

We proceed to notice *seriatim* the several contentions made in appellants' behalf.

Section 2924 of the Civil Code requires in case of mortgages containing powers of sale or transfers in trust to secure the payment of obligations (with certain exceptions not material here) that the power shall not be exercised until:

"(a) the trustee, mortgagee, or beneficiary shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default, identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page where the same is recorded or a description of the mortgaged or trust property and containing a statement that a breach of the obligation for which such mortgage or transfer in trust is security has occurred, and setting forth the nature of such breach and of his election to sell or cause to be sold such property to satisfy the obligation; (b) not less than three months shall thereafter elapse; and (c) the mortgagee, trustee or other person authorized to make the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that required by law for sales of real property upon execution."

The first objection made to the recorded notice is that it is signed only by the Birkhofers, whereas the "beneficiary" named in the deed of trust is Attwood. This objection seems to us without substance.

Even if the Birkhofers were no more than pledgees of the Grigsby-Krumm note and of the Attwood interest in the deed of trust made to secure it, they would as such pledgees be entitled to collect it when due. (Civ. Code, sec. 3006.) This right, while they actually held the paper, would include . the right to exercise the option contained in the acceleration clause to declare the note due for any default in payment of interest or principal thereon. (*Patten* v. *Pepper Hotel Co.*, 153 Cal. 460 [96 Pac. 296]; *Beatty* v. *Pacific States Sav. & Loan Co.*, 4 Cal. App. (2d) 692, 699 [41 Pac. (2d) 378].) Whether or not the Birkhofers can in fact be said to have been more than pledgees, so far as their relations to Krumm

were concerned they held the legal title to. the paper and the circumstance that the assignment under which they held was as security only is no concern of his. (*Wetmore* v. *San Francisco*, 44 Cal. 294, 300; *Bell* v. *Staacke*, 141 Cal. 186, 202 [74 Pac. 774]; *Graham* v. *Light*, 4 Cal. App. 400 [88 Pac. 373]; *Woolf* v. *Clark*, 17 Cal. App. 696 [121 Pac. 407]; *Traders Bank* v. *Wilcox*, 42 Cal. App. 24 [183 Pac. 256]; *Tilden Lumber etc. Co.* v. *Bacon Land Co.*, 116 Cal. App. 689, 693 [3 Pac. (2d) 350].) So far as Krumm was concerned, then, the Birkhofers are to be treated as successors in interest of Attwood, the original "beneficiary" named in the deed of trust, and as being, accordingly, the "beneficiaries" thereof. The circumstance, therefore, that no other signatures than those of the Birkhofers appear on the notice of default as filed for record does not affect its validity.

The next point made is that in the notice of default the particulars of the breach relied on are not correctly stated. In that contention appellant is in part right. The notice of default describes the breach as consisting in the failure to pay $1,067.50 interest that became due on March 27, 1933, a further $1,067.50 which became due on September 27, 1933, and $2,500 constituting one-half of a $5,000 instalment of principal which became due on March 27, 1932. As to this last item there had in fact been an extension of time for making the payment granted by the agreement referred to in the pleadings until March 27, 1934, so that, but for the right to accelerate the due date of the whole obligation it would not as yet have been due at all. On the other hand the notice of default omits to state that on account of a $5,000 instalment of principal which fell due on March 27, 1933, $2,000 in fact remained in default, the extension of time referred to having included the other $3,000 thereof only. ■ In this connection respondents call attention to the fact that in 1928 when the deed of trust was executed the words now included in the above-quoted provisions of section 2924 of the Civil Code "and set forth the nature of such breach" did not appear therein and were first added by an amendment made in the year 1933, in consequence of which it is claimed that it was unnecessary in the instant case in filing the notice of default to include therein any of the particulars respecting the breach, since, as is claimed, the amendment could not in that respect affect an existing deed

of trust. To this effect are cited various decisions, none of which have, in our opinion, any application. The amendment to section 2924 was, in the particular noted, purely procedural. It is true that procedural changes will not be upheld where they operate to the prejudice of previously vested rights. This change, however, had no such tendency and compliance with the added requirement was easily possible. We do not doubt, therefore, that when this notice of default was filed for record, the statutory requirement that such notice set forth the nature of the breach, existed. ■ What we have, however, in this connection to decide, is whether or not the errors noted in the statements actually made in the notice are such as to be fatal to its validity. We do not think that they are. In *Williams* v. *Koenig*, 219 Cal. 656, 660 [28 Pac. (2d) 351], it is said:

"There is no requirement that the wording of a notice of default follow literally the wording of the statute; a substantial compliance in accord with the spirit and purpose of the statute is sufficient."

In *Rogers* v. *Evans*, 137 Cal. App. 538, 546 [31 Pac. (2d) 233], it was held that recitals not required by the statute or the terms of the trust, though in fact incorrect, are but surplusage, and do not invalidate the notice. Even with respect to statements of the nature of the breach under the code section as it now reads the Supreme Court has held, in *Engelbertson* v. *Loan & Building Assn.*, 6 Cal. (2d) 477 [58 Pac. (2d) 647, 648], that:

"There is nothing in the section which warrants the construction that a statement of the amount of the items is required."

In that case the notice specified that the obligor was in default as to "the instalment of interest falling due on December 1, 1933, and of instalments of interest subsequently falling due", and as to "balance of $2.32 on the September 1, 1932, instalment of dues on building and loan shares pledged by the trustors and all subsequent instalments", and "certain sums of money advanced or expended under the terms of said deed of trust, together with interest thereon as provided in said deed of trust".

In our view the intent of the statute is sufficiently complied with if the notice of default contains a correct statement of some breach or breaches sufficiently substantial in

their nature to authorize the trustee or beneficiary to declare a default and proceed with a foreclosure. Since reliance on these breaches is manifestly enough to authorize the proceeding, the circumstance that erroneous statements may appear in the notice about other breaches, which breaches, if they occurred, would only be cumulative so far as their effect was concerned, may properly be treated as immaterial. In the instant case there is no doubt that two substantial breaches in the payment of interest when due had occurred and had not been remedied at the time the notice was filed for record, nor is there any question that these breaches were in themselves enough to have authorized the holder or holders of the note to invoke the acceleration clause therein. In these circumstances we hold that the confusion in the notice with respect to the default in the principal was harmless.

It is true that between the time that the notice of default was filed for record and the date of the sale the earlier of these two delinquent interest instalments was paid up but the other one was not. Acceptance of such partial payment has been in this state repeatedly held to be no waiver of the notice of default nor of the breaches therein described. (*Harris* v. *Whittier B. & L. Assn.*, 18 Cal. App. (2d) 260, 268 [63 Pac. (2d) 840]; *Sellman* v. *Crosby*, 20 Cal. App. (2d) 562, 564, 565 [67 Pac. (2d) 706]; *Arata* v. *Downer*, 21 Cal. App. (2d) 406, 409 [69 Pac. (2d) 213].)

It is further claimed that the sale was invalid because made to realize a sum greater than the amount in default under the note and deed of trust. We see no force in this argument inasmuch as the notice of default expressly declares an election to "sell or cause to be sold the premises and property described in said deed of trust to satisfy *the obligations* and *all of the obligations secured by said deed of trust*". This can amount to nothing less than a declaration of election to declare the whole sum of principal and interest on the Grigsby-Krumm note immediately due and payable. The acceleration clause having been thus invoked and the whole obligation declared due it follows the sale was not had for the purpose of realizing any excessive amount.

It is next urged with great insistence both by appellant's counsel and by the learned *amicus curiae* that sections 580a, 580b and 580c of the Code of Civil Procedure are applicable and must be fatal to respondents' case. The ques-

tion of the applicability of legislation of the general description involved in section 580a to contracts previously made has been often considered in this state. In *Brown* v. *Ferdon*, 5 Cal. (2d) 226 [54 Pac. (2d) 712], there were involved a note and deed of trust executed in 1930 and sale made thereunder after the effective date of section 2924½ of the Civil Code passed in 1933, which, as amended in 1935, provides that:

"No judgment shall be rendered for the balance due upon any obligation which was secured by a deed of trust or mortgage with power of sale upon real property following the exercise of such power of sale, if exercised at any time between the effective date of this act and September 1, 1937, unless it shall affirmatively appear that the notice of breach and election to sell provided for in section 2924 of the Civil Code, pursuant to which such sale was held, was recorded at least one year before the date of such sale. This section shall be effective until September 1, 1938."

The court, after noting that if this law were to be applied to contracts already in existence then the payee of a trust deed note would have either to waive his right to a deficiency judgment against the maker or else to wait nine months longer than he was formerly required to wait before the trustee might sell the property to satisfy the debt, proceeded to hold that if the statute were so applied as to accomplish that result, its effect would impair the obligation of the contract within the meaning of the provisions both of the federal and state Constitutions forbidding such impairment. It was further held that the remedy, where it affects substantial rights, is included in the term "obligation of contract" and could not be so altered as to materially affect such obligations. (Citing *Green* v. *Biddle*, 8 Wheat. 1, 75 [5 L. Ed. 547]; *Edwards* v. *Kearzey*, 96 U. S. 595, 600 [24 L. Ed. 793]; *Barnitz* v. *Beverly*, 163 U. S. 118 [16 Sup. Ct. 1042, 41 L. Ed. 93].) The court distinguished the case before it from *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398 [54 Sup. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481], which upheld the Minnesota moratorium law on the ground that the latter case not only involved emergency legislation but also that the legislation there considered merely "extended the period of redemption upon reasonable conditions considerate of the rights of both debtor and creditor", noting that the extension of time authorized

under the Minnesota law did not run automatically in favor of any debtor, but might only be had upon conditions fixed by the court after judicial ascertainment of what was fair to both debtor and creditor under the conditions existing in each case, and only when the debtor pays the rental value of the property as fixed by the court upon notice and hearing, and that it was in the Blaisdell case distinctly held that the temporary and conditional restraint imposed by the Minnesota statute ''in order not to contravene the constitutional provision, could only be of a character appropriate to that emergency and could be granted only upon reasonable conditions'', which were in that case held to exist. By contrast section 2924½ of the California Civil Code was said, though limited in time, to fix no conditions for its operation, to purport to give relief to any debtor irrespective of the amount of his indebtedness, the condition of the security or his need for additional time; to impose no condition upon the debtor in connection with the use and occupation of the property, to give no opportunity for inquiry into the situations of the respective parties and to provide no forum for the creditor to present the situation from his standpoint, but simply to give the debtor a preference without any consideration of the rights of the creditor. Such a statute, the court held, could not under the constitutions, state or federal, be made to apply to preexisting contracts. *Brown* v. *Ferdon, supra,* is undoubtedly the leading California case dealing with recent legislation having to do with the relief of debtors. There have, of course, been many others which have reached the supreme and appellate courts of this state.

When we come to section 580a of the Code of Civil Procedure, and the decisions which deal specifically with it, regard must be had to the fact that that section deals with two essentially different subjects, that is, first with the amounts for which the deficiency judgments therein referred to may be rendered; and second, with the time within which actions to recover such judgments must be commenced. Decisions that have to do with the applicability or inapplicability of the section to given situations must be understood with reference to that distinction.

In *Bennett* v. *Superior Court,* 5 Cal. App. (2d) 13 [42 Pac. (2d) 80], in which a hearing was denied by the Supreme Court, the District Court of Appeal of the Second District

denied an application for writ of mandate to require the Superior Court of Los Angeles County to appoint an appraiser under the provisions of section 580a of the Code of Civil Procedure in an action brought to recover a deficiency judgment upon an obligation secured by a deed of trust, after a sale, made before the effective date of the statute. The court held that it was not competent to so apply the statute as to limit the creditor to a recovery of merely the difference between the entire amount of the indebtedness and the fair market value of the property at the time of the sale, as the court might determine such value from the evidence, including the appraiser's report, and said that:

"The substantive right of the beneficiary under the trust deed to be repaid the entire amount of the indebtedness had accrued before the section cited became effective, and the regulation which it contemplates could not be construed as having entered into the dealings between the parties when the contract was made. The operation of the statute in the circumstances is far more than procedural."

The same court in *California Trust Co.* v. *Smead Investment Co.,* 6 Cal. App. (2d) 432 [44 Pac. (2d) 624], which was also an action to recover a deficiency judgment after a trustee's sale held before the effective date of section 580a, held that statute inapplicable. The body of the opinion does not disclose in terms which provision of the section the defendant was there seeking to invoke, though it may be gathered from the syllabus that, as in the Bennett case, the effort was to secure the appointment of an appraiser and limit the amount of the deficiency in the manner which the section contemplates. In *Title Ins. & Trust Co.* v. *Kinkel,* 7 Cal. App. (2d) 623 [46 Pac. (2d) 778], there was again involved a case where both the execution of the deed of trust and the sale under its terms preceded the effective date of the code section, and the court again, upon authority of *Bennett* v. *Superior Court, supra,* held the right to require the appointment of an appraiser in the effort to limit the amount of the deficiency judgment inapplicable. *Wilson* v. *Superior Court,* 8 Cal. App. (2d) 14 [47 Pac. (2d) 331], was a case where the plaintiff, instead of causing a sale to be made by a trustee under a deed of trust executed prior to the effective dates of the 1933 amendment of section 726 and of section 580a of the Code of Civil Procedure, brought

a foreclosure suit in the first instance and was met with the demand for the appointment of an appraiser, in the effort, again, to limit the amount of a plaintiff's deficiency judgment. That court held that the authority for such procedure contained in section 726 was inapplicable and remarked that had the plaintiff, instead of suing at the outset, first caused a trustee's sale to be had and then sued for a deficiency judgment section 580a would have been also inapplicable. In *Bank of America Nat. T. & S. Assn.* v. *Dennison*, 8 Cal. App. (2d) 173 [47 Pac. (2d) 296], the note of the defendants had been secured both by a deed of trust on land and a chattel mortgage on personal property. There had been a trustee's sale of the land on August 15, 1932, being prior to the enactment of section 580a of the Code of Civil Procedure, and a sale under the chattel mortgage on February 13, 1934, which was after its effective date. On March 20, 1934, more than three months after the date of the sale under the deed of trust and a little more than a month subsequent to the sale under the chattel mortgage, the holder of the note brought an action to recover a deficiency judgment against the obligors thereon. The trial court, having sustained a demurrer to the complaint based on the statute of limitations involved in subdivision 1 of section 377 of the Code of Civil Procedure as amended in 1933, and section 580a of the Code of Civil Procedure as enacted in that year, and having entered judgment for the defendants, the judgment was on appeal reversed. While the opinion recognized that if a cause of action is not yet gone the legislature may shorten the time within which it may be asserted, provided that reasonably sufficient time be still allowed for its assertion, the Appellate Court held that the enactment of limitations of three months after a sale had in which to commence action for a deficiency judgment, could not, consistently with the constitutional rights of a creditor, be applied to a situation in which, at the time of the enactment, the three months next following the trustee's sale had already run, for that would leave no time at all available in which to bring an action for the deficiency. So far as section 580a and the amended subdivision of section 337 of the Code of Civil Procedure were concerned the court said (p. 179):

"We are satisfied that the legislature intended that the operation of these practically duplicate laws should be limited to cases where the sale took place after their effective dates."

This language, of course, must be understood from its context. The court did not thereby decide that section 580a *as a whole* might be applied in case of contracts made before its effective date, if only the sale of the security were not made until after that date. All that the court can here have meant was that the amended subdivision 1 of section 337 and so much of section 580a as constitutes a statute of limitations, might, without infringing constitutional provisions, be applied in such a case.

*Bechtel* v. *Nelson,* 10 Cal. App. (2d) 66 [51 Pac. (2d) 99], was another action to recover a deficiency judgment where the sale under a deed of trust had occurred prior to the effective date of section 580a. What was involved was the provision of that statute limiting the amount of the deficiency judgment following the sale under a deed of trust to the sum by which the amount due exceeded the fair market value of the property at the date of the sale. The court, following *Bennett* v. *Superior Court, supra,* held the statute inapplicable. A hearing in the case was denied by the Supreme Court. This case was followed by *Smith* v. *Davis,* reported in the same volume (p. 487 et seq. [52 Pac. (2d) 515]), where in like circumstances the same result was announced. In *Central Bank of Oakland* v. *Proctor,* 5 Cal. (2d) 237 [54 Pac. (2d) 718], involving a deed of trust executed before the effective date of section 580a of the Code of Civil Procedure, it does not appear from the opinion whether the trustee's sale occurred before or after the effective date of the enactment. However that may have been, the defendant had, during the trial, in reliance on the provisions of that statute, sought to introduce evidence regarding the market value of the property described in the deed of trust at the time of the sale. The evidence was excluded. The Supreme Court said:

"We find no error in the rulings thereon, for in *Bennett* v. *Superior Court,* 5 Cal. App. (2d) 13 [42 Pac. (2d) 80], hearing denied in this court, it was held that section 580a, *supra,* was without application to notes and deeds of trust antedating its enactment."

In *Groner* v. *Kornblum,* 12 Cal. App. (2d) 757 [54 Pac. (2d) 1115], it appeared that the note and deed of trust involved were executed and that the note fell due prior to the effective date of section 580a of the Code of Civil Proce-

dure. However, the sale under the deed of trust was not made until October 17, 1933, which was after its effective date. The action was commenced on January 13, 1934. The opinion states that the case involved the right of the defendant to claim the benefits of section 580a. It seems clear that the benefits which the defendant sought to claim were not those of the statute of limitations included in section 580a, since suit was brought within the three months allowed by that statute for that purpose. The benefits claimed must, therefore, have been those provided for limiting the amount of the deficiency judgment. These were held by the court to be inapplicable to the case.

*Bechtel* v. *Clemons,* 12 Cal. App. (2d) 309 [55 Pac. (2d) 531], involved a default in payment of note secured by a deed of trust, both of which antedated section 580a of the Code of Civil Procedure. The property described in the deed of trust was sold, though it does not appear from the decision when the sale occurred with respect to the effective date of the code section. Action was then brought to recover a deficiency judgment and a defense based in part on section 580a of the Code of Civil Procedure held inapplicable on the authority of *Bechtel* v. *Nelson, supra.* While the opinion does not state in terms what provision of section 580a the defendant sought to invoke, it may be gathered both from the reference to *Bechtel* v. *Nelson, supra,* and from the circumstance that inadequacy of the price realized at the trustee's sale was urged, that what the defendant was seeking to avail himself of was the provision limiting the amount of the deficiency judgment.

In *Bank of America Nat. T. & S. Assn.* v. *Hirsch,* 13 Cal. App. (2d) 681 [57 Pac. (2d) 521], a default having occurred upon an obligation secured by a deed of trust, the property described in the latter had been sold on August 31, 1932. An action to recover a deficiency judgment was filed late in 1934 and the court on the authority of *Bank of America N. T. & S. A.* v. *Dennison, supra,* held that the provisions of section 580a of the Code of Civil Procedure forbidding such an action unless brought within three months after the sale, were inapplicable.

*Reynolds* v. *Jensen,* 14 Cal. App. (2d) 558 [58 Pac. (2d) 687] (hearing denied by the Supreme Court), was again an action to recover a deficiency judgment after a sale of land

under a trust deed. While the note and deed of trust were executed before the effective date of section 580a and of the amended subdivision 1 of section 377 of the Code of Civil Procedure, the trustee's sale had not occurred until after the effective date of those enactments and the action to recover the deficiency was not brought within three months after the sale. The court, citing the Dennison case, held that in these circumstances the statutes of limitation contained in the enactments mentioned could, without violation of constitutional limitations, be applied and a defense based upon them upheld. An identical situation was involved in *Palo Alto Mutual Building & Loan Assn.* v. *Cook,* 17 Cal. App. (2d) 193 [61 Pac. (2d) 499], and the same result reached. The opinion in this case very clearly points out what we have already noted in the present opinion, that in cases involving the applicability or nonapplicability of section 580a, where the instruments concerned were executed before its effective date, the distinction between the provisions of that section for limiting the amount of deficiency judgments and its provision in the nature of a statute of limitations, must be observed. It is in that connection said:

''Appellant calls our attention to the language used in *Central Bank of Oakland* v. *Proctor,* 5 Cal. (2d) 237 [54 Pac. (2d) 718], where it is indicated that said section 580a does not apply to deeds of trust antedating its enactment. But the court there was dealing with provisions of said section other than those relating to the time for bringing an action to recover a deficiency judgment. Reading that decision in the light of the question before the court, we find nothing therein which is in conflict with the holding in *Reynolds* v. *Jensen, supra.*''

In *Loeb* v. *Christie Hotel Corp.,* 16 Cal. App. (2d) 299 [60 Pac. (2d) 529], it was held that section 580a of the Code of Civil Procedure could have no retroactive effect. The facts, however, are not stated in the opinion with sufficient detail to make it clear just what application of the section the defendant had sought to make.

In *Everts* v. *Blaschko,* 17 Cal. App. (2d) 188 [61 Pac. (2d) 776], this court held inapplicable the provisions of section 580a of the Code of Civil Procedure requiring actions to recover deficiency judgments after sale under a deed of trust to be brought within three months after the sale. The opin-

ion states that the sale was had in 1933 and is not explicit as to whether it did or did not occur before the effective date of section 580a, *supra,* which was August 21, 1933. A reference to the original record in the case, however, shows the date of the sale to have been June 14, 1933, that is before the statute became effective. The decision, therefore, is in line with the principles announced in the Dennison case.

*Security First Nat. Bank* v. *Sapkin,* 19 Cal. App. (2d) 224 [64 Pac. (2d) 1097, 66 Pac. (2d) 656], also involved an action to recover a deficiency judgment after a sale had under a deed of trust on June 28, 1933, that is before the effective date of section 580a of the Code of Civil Procedure. The statute of limitations involved in that enactment was in the circumstances again held inapplicable.

In *Bank of America Nat. T. & S. Assn.* v. *Century Land & Water Co.,* 19 Cal. App. (2d) 194 [65 Pac. (2d) 109], another action brought to recover a deficiency judgment after a sale under a deed of trust securing a note executed before the effective date of section 580a, *supra,* the section was again held inapplicable. It does not appear from the opinion whether the sale itself was held before or after the effective date of the statute. Neither does it appear in terms just what provisions of the statute the defendant sought to invoke. From the discussion in the opinion of the question of inadequacy of price, however, it may be gathered that he relied on the provision for limiting the amount of the deficiency judgment.

Finally, in *Bakersfield Home Building Co.* v. *J. K. McAlpine Land & Development Co., Ltd.,* 26 Cal. App. (2d) 444 [79 Pac. (2d) 410] (decided May 19, 1938), we recognized the validity, as applied generally to actions to collect deficiencies after sales under deeds of trust occurring subsequent to the effective date of the code section, of the three months' limitation of time therein provided, but held that, as far as the case then before us was concerned, the limitation was suspended by the moratorium legislation of the state. Following *Bennett* v. *Superior Court, supra,* however, we held the other and distinct provisions of section 580a having to do with the limitation on the amounts of deficiency judgments inapplicable to obligations existent at the time that section became effective.

As respects section 580b of the Code of Civil Procedure undertaking to forbid deficiency judgments altogether under deeds of trust or mortgages given to secure payment of the purchase price of real property it was, in *Hales* v. *Snowden,* 19 Cal. App. (2d) 366 [65 Pac. (2d) 847] (hearing denied by the Supreme Court) held that to give the same application to cases arising under contracts executed before its effective date would violate both article I, section 10, of the Constitution of the United States and article I, section 16, of the Constitution of California.

Section 580c of the Code of Civil Procedure seems up to this time to have engaged no considerable degree of judicial attention.

To summarize, then, the course of the decisions in this state with respect to the said code sections 580a, 580b and 580c, the situation may be thus stated:

As to section 580a, (1) its provisions looking toward the limitation of deficiency judgments to the difference between the whole indebtedness and what the court may find to have been the fair market value of the real property by which, prior to the sale, the indebtedness was secured, have uniformly been held inapplicable to contracts made before the effective date of the code section, regardless of whether the sale of the security was had before or after such effective date; (2) its provisions in respect of contracts entered into before the effective date of the section, in so far as they undertake to impose a limitation of three months after the date of sale of the land by which an obligation is secured, wherein to bring an action for a deficiency judgment, have uniformly been held inapplicable when the sale of the land constituting the security for the debt has been had prior to the effective date of the code section, but to be applicable when such sale has been held thereafter, since, after the effective date of the statute there has still remained a reasonable time for commencing such action to recover the deficiency.

Section 580b has been held inapplicable in its entirety to contracts made before its effective date.

Section 580c, in so far as it represents any innovation, has not been the subject of judicial cognizance.

It is now earnestly contended that the foregoing decisions must be reconsidered in the light of the determination of the Supreme Court of the United States in *Richmond Mort-*

*gage & Loan Corp.* v. *Wachovia Bank & Trust Co. et al.*, 300 U. S. 124 [57 Sup. Ct. 338, 81 L. Ed. 552, 180 A. L. R. 888]. There a North Carolina statute provided that in case of any sale of real estate or personal property made by a mortgagee, trustee or other person authorized to make the same, at which the mortgagee, payee, or other holder of the obligation thereby secured should become the purchaser and take title; and thereupon such mortgagee, payee or holder of the obligation should sue the mortgagor, trustor or other maker of the obligation whose property had been so purchased to recover a deficiency, it should be lawful for the defendant against whom such deficiency should be sought to allege and show as a matter of defense and offset that the property was fairly worth the amount of the debt secured by it at the time of the sale or that the amount bid was substantially less than its true value, and upon such showing to defeat or offset any deficiency judgment against him in whole or in part. It was competent under North Carolina law as an alternative to proceeding under powers of sale contained in instruments of the description mentioned, to foreclose by appropriate suit in equity. In these circumstances the Supreme Court of the United States affirmed a decision of the Supreme Court of North Carolina (*Richmond Mtg. & Loan Corp.* v. *Wachovia Bank & Tr. Co.*, 210 N. C. 29 [185 S. E. 482]) holding that the statute did not, when applied to instruments entered into prior to its effective date, violate the obligation of contract. It was in the opinion *inter alia* said that:

"Although admitting that the challenged legislation affects only a remedy for enforcement of the contract, the appellant urges that the alteration is so substantial as to impair the obligation of the contract. The applicable principle is not in dispute. The Legislature may modify, limit, or alter the remedy for enforcement of a contract without impairing its obligation, but in so doing, it may not deny all remedy or so circumscribe the existing remedy with conditions and restrictions as seriously to impair the value of the right. The particular remedy existing at the date of the contract may be altogether abrogated if another equally effective for the enforcement of the obligation remains or is substituted for the one taken away."

The court went on to say that in the case before it:

"When the loan was made, two such remedies were available. The mortgagee could proceed by bill in equity to foreclose the security. If it did, the chancellor who controlled the proceeding could set aside a sale if the price bid was inadequate. In addition, he might award a money decree for the amount by which the avails of the sale fell below the amount of the indebtedness, but his decree in that behalf would be governed by well-understood principles of equity. An alternative remedy sanctioned by state law was available if the deed of trust so provided. This was the sale of the pledged property by the trustee. If this were the remedy authorized by the contract, and the mortgagee himself became the purchaser at the trustee's sale, he might thereafter, in an action at law, recover the difference between the price he had bid and the amount of the indebtedness."

The court then proceeded to note the changes in the latter remedy above detailed effected by the North Carolina statute under review. It was observed that the changes had no applicability if the purchaser at the sale under the power contained in the instrument involved was other than the obligee. The court then went on to say:

"The act alters and modifies one of the existing remedies for realization of the value of the security, but cannot fairly be said to do more than restrict the mortgagee to that for which he contracted, namely, payment in full. It recognizes the obligation of his contract and his right to its full enforcement but limits that right so as to prevent his obtaining more than his due. By the old and well-known remedy of foreclosure a mortgagee was so limited because of the chancellor's control of the proceeding. That proceeding, as has been said, has always been available to the mortgagee in North Carolina. Granting that by the alternative remedy of trustee's sale the mortgagee might perchance obtain something more, or might obtain only that which was his due somewhat more expeditiously, than he could in chancery, it remains that the procedure to foreclose in equity is, and has been, the classical method of realization upon mortgage security and has always been understood to be fair to both parties to the contract and to afford an adequate remedy to the mortgagee. If, therefore, the Legislature of the state had elected altogether to abolish the remedy by trustee's sale, we could not say that it had not left the mortgagee an adequate remedy for the

enforcement of his contract. But the Legislature has by no means gone so far. The law has merely restricted the exercise of the contractual remedy to provide a procedure which, to some extent, renders the remedy by a trustee's sale consistent with that in equity. This does not impair the obligation of the contract.''

It cannot with candor be denied that this decision of the Supreme Court of the United States considerably impairs the assurance with which the reasoning heretofore adopted by all courts of appellate jurisdiction in this state in holding that the application of section 580a of the Code of Civil Procedure to the limitation of the amounts of deficiency judgments would contravene article I, section 10, of the federal Constitution and the cognate provisions of article I of section 16 of the California Constitution, can now be regarded. There can be no doubt that the question is essentially one of federal cognizance for, although a provision of the state Constitution is involved, it is a provision *in pari materia* with the corresponding section of the federal Constitution, and since the federal Constitution is, as respects the subjects within its purview, the supreme law of the land, and the determination of the federal courts with respect to its construction are binding upon the tribunals of the states, it follows that such provisions of state Constitutions as merely parallel and iterate provisions of the federal Constitution must be so construed as to harmonize with the construction placed by the federal courts upon the latter. It must, moreover, be noted that in California, since the enactment of section 725a of the Code of Civil Procedure, a beneficiary under a deed of trust on real estate made to secure an obligation, as an alternative to such right as he may have under the instrument involved to require the real property affected to be sold at trustee's sale and then to pursue the debtor at law to recover any deficiency, has, in the event of a breach, the statutory right to proceed with a foreclosure suit in equity as in the case of a mortgage, and that, in that respect, the situation here is in a considerable degree analogous to that existing in North Carolina and involved in *Richmond Mortgage & Loan Corp.* v. *Wachovia Bank & Trust Co. et al., supra.*

Recognizing, however, as we do, the important bearing of the pronouncement of the Supreme Court of the

United States upon the discussion, we still regard it as the function, rather of the Supreme Court of the state than of any state court subordinate to it, to announce changes in what has hitherto been treated within the state as the settled law with respect to the constitutionality of a given application of a state statute, unless indeed there be so exact a parallel between a particular case presented and a controlling decision of a federal court, that no reasonable distinction between them can be made. In the instant case, notwithstanding the similarity, in many respects, of the situation in California to that in North Carolina there remain substantial differences. (a) It has been observed, that under the North Carolina statute the right to limit the deficiency judgment, in actions at law to recover the same, after a sale of the property originally securing the debt under a power of sale contained in the instrument involved, existed only when the obligee became the purchaser at the sale, whereas section 580a of our Code of Civil Procedure makes no such distinction. This difference is not in itself unimportant. Equity has, in many jurisdictions, looked with disfavor upon the purchase by an obligee of property which has constituted the security for an obligation, although, indeed, such purchase is not, in ordinary circumstances discountenanced in this state. It cannot, however, be gainsaid that there is a widespread opinion that, because of possible collusion or oppression, such purchases by obligees are to be regarded with caution and as a proper subject of regulation. A statute providing machinery to the extent referred to, for limiting deficiency judgments only in case the purchase has been made by the obligee, but leaving the amount of the deficiency to be fixed with reference to the amount actually realized at the sale, where outsiders unconnected with the obligee have purchased the property, does not deprive the obligee, who need not be a purchaser, of the right to have the actual market value of the security determined by the practical test of competitive bidding, rather than by some retrospective and theoretical view and finding of a court or jury. If no competitors appear at a particular time he need not purchase, but the sale may, from time to time, be postponed so as to thoroughly test the market. As contradistinguished from the North Carolina statute, however, section 580a of the California Code of Civil Procedure undertakes to deprive the obligee of all right to

rely with finality, in the event of the sale under a power contained in the instrument involved, on this practical test by subjecting such test, so far as the amount of the deficiency judgment to be awarded is concerned, to the retrospective review of a court or jury. Furthermore, if the sale has been made under a power and an action thereafter instituted for the deficiency, the situation is different from that under what the United States Supreme Court characterizes as the ''classical'' equity practice, as existing in many jurisdictions, where a sale, having been made under judicial process, must still be confirmed by the court. Under such equity practice it has not been necessary for the obligee to part with his security until he has been in possession of the court's ruling as to its market value and as to the resulting amount of the deficiency judgment in money to which he will be entitled, whereas, where he has once caused the security to be sold under a power and the proceeds to be applied on the debt, such obligee has no way of recouping it and attempting to sell it for a higher figure, if, in the subsequent action for a deficiency judgment the court or jury decide, in the retrospect, that it ought to have brought more at the sale and limit his deficiency judgment accordingly.

If it be said that these considerations are without weight because in California now, as in North Carolina, the obligee is not forced to rely, in an action to recover the deficiency, after an exercise of the power of sale in a deed of trust or other instrument securing the obligation, on a subsequent action at law, but since the enactment of section 725a of the Code of Civil Procedure may, as he may in North Carolina, go into equity at the outset and there foreclose, and as a part of the same proceeding, obtain a judgment for the deficiency, the answer is that if he does so he will in California be confronted with the same situation that would have met him here had he caused the sale of the security before resorting to the court. This is true because the new procedure for judicial foreclosure in this state is, again, not, as in North Carolina, the ''classical'' procedure, afforded by the equity practice, of a sale under judicial process followed by a hearing as to whether or not it shall be confirmed; neither is it the former California practice under which a sale under judicial process, but without the necessity for confirmation, automatically determined the amount of the deficiency; but it is, since sec-

tion 726 of the Code of Civil Procedure has been recast in its present form, a different practice, under which, after a judgment fixing the amount of the defendant's liability, a sale under court process of the security is first had, without any requirement of judicial confirmation, and then, the security having been thus parted with, even in cases where the obligee is not the purchaser, the court proceeds with the aid, if requested, of an appraiser, to decide in the retrospect, not what could have been realized for such security *at a forced sale* but what was its *market value* at the time of sale, and then to limit the amount of the deficiency judgment to the difference between the amount of the obligation and such theoretical market value. It may be added that in *Wilson* v. *Superior Court*, 8 Cal. App. (2d) 14 [47 Pac. (2d) 331] (hearing denied in the Supreme Court), it was held that even in a foreclosure in equity under section 725a of the Code of Civil Procedure of a deed of trust executed before said section was enacted and before section 726 of the Code of Civil Procedure was recast, the obligor could not, without infringing upon the constitutional rights of the obligee, insist on the method of limiting the deficiency judgment contemplated by section 726 as amended.

(b) A further and most important difference between the situation in North Carolina and that in California is that under the North Carolina statute as set out in the footnote to *Richmond Mortgage & Loan Corp.* v. *Wachovia Bank & Trust Co., supra,* the limitation there contemplated of the amount of the deficiency judgment in case of the purchase by the obligee at a sale held under a power contained in the instrument wherein the security is provided, has no application at all if the obligee elects to pursue his alternative remedy by foreclosure in equity and sale under process of the court, even though he become the purchaser at the sale, whereas the California statute (sec. 726, Code Civ. Proc.) undertakes by a sweeping provision to apply the limitation of the deficiency judgment to any and every judicial foreclosure, thus leaving to the creditor no way at all of avoiding the limitation.

(c) A still further and vital distinction between the law of North Carolina and that of California so far as we are able to ascertain the situation from an examination of the statutes of the former state accessible to us, is that, although under

North Carolina law no foreclosure sales under mortgages or deeds of trust, whether under powers of sale therein or pursuant to court decrees can be final until ten days after the making of a sale, and although if, within such time, an increased bid in the statutory amount be received, a resale must be had (North Carolina Code of 1931, sec. 2591) ; yet, after the time for receiving bids is past, regardless of whether the sale was made under a power in the instrument involved, or has been made under court decree and is, thereafter, confirmed by the court, no right of redemption exists; whereas in California, redemption may be made at any time within a year. (Code Civ. Proc., sec. 702.) It has been held that statutes purporting to give a right of 'redemption where none existed when the instrument involved was executed, infringe upon the constitutional rights of the obligee (*Barnitz* v. *Beverly,* 163 U. S. 118 [16 Sup. Ct. 1042, 41 L. Ed. 93)] ; also statutes purporting to enlarge an existing right of redemption (*Coddington* v. *Bispham,* 36 N. J. Eq. 574) ; or to extend the time within which it may be exercised. (*Barnitz* v. *Beverly, supra*; *State* v. *Sears,* 29 Or. 580 [43 Pac. 482, 46 Pac. 785, 54 Am. St. Rep. 808].) So, also, with statutes forbidding a mortgagee to take possession at an agreed time (*Mundy* v. *Monroe,* 1 Mich. 68; *Blackwood* v. *Van Vleet,* 11 Mich. 252; *Boice* v. *Boice,* 27 Minn. 371 [7 N. W. 687].) These decisions must, of course, be now read with the reservations attending valid emergency legislation as expounded in *Home Building & Loan Assn.* v. *Blaisdell, supra,* but neither sections 580a nor 580b of the Code of Civil Procedure nor the provisions of section 726 of that code in its amended form relating to deficiency judgments, though doubtless suggested by the financial depression, purport at all to be merely emergency legislation but appear on the contrary to be intended to be permanent in their operation. Manifestly, then, the effect of resorting to a foreclosure in equity is, that the holder of a deed of trust containing a power of sale subjects the security to a possible redemption within a year, to which it would not otherwise be subject and is for that reason, additional to those recounted under (a) and (b) above, no equivalent for the remedies possessed by him prior to the time sections 580a and 580b of the Code of Civil Procedure became effective.

In view then, of the differences that we have pointed out between the statutory provisions in force in North Carolina

and our own we are not prepared to depart from the above-cited decisions in this state to the effect that neither the provisions of section 580a, *supra*, for limiting the amount of deficiency judgments, nor those of section 580b, *supra*, forbidding deficiency judgments in the case of foreclosures under powers of sale in mortgages or deeds of trust given for the purchase price of property, can be properly applied to contracts made prior to the effective date of those sections.

A good deal is said in the briefs about the inadequacy of the price at which the property that originally constituted the security for the indebtedness here involved was sold. Counsel for appellant assert as an undisputed fact that the land was worth $1500 per acre at the time of the sale, or for some 27½ acres which it included an aggregate of $41,250. Appellant did, indeed, so testify, and in one of the former opinions of this court (23 Cal. App. (2d) 269 [72 Pac. (2d) 899]) his testimony to that effect is treated, in view of the other circumstances appearing in the pleadings and evidence, as not devoid of substantial importance. On the other hand plaintiffs (respondents) have tendered no issue respecting the value of the security and if we are right in the views hereinbefore expressed of the law, they were not required to tender any. The answer, on the other hand, states its reasonable value, as we saw, to be $30,000, which allegation, however, is one of those which the trial court found to be untrue. Courts and juries, of course, are not necessarily bound to accept the opinion of a witness on a question of value but such opinion is to be weighed in connection with other circumstances that may be shown. (*Linforth* v. *San Francisco Gas & Electric Co.*, 156 Cal. 58 [103 Pac. 320, 19 Ann. Cas. 1230]; *Nylund* v. *Madsen*, 94 Cal. App. 441 [271 Pac. 374].) We are without other information as to precisely what the trial court believed the value of the security sold to have been at the time of the sale than may be gathered from its finding already alluded to against the appellant's claim that it sold for an inadequate price. Though it be assumed, however, that the evidence is insufficient to justify that view, it is still the law of this state that inadequacy of price, however gross, furnishes of itself alone no ground for setting aside a sale in other respects valid. (*Winbigler* v. *Sherman*, 175 Cal. 270 [165 Pac. 943]; *Rauer* v. *Hertweck*, 175 Cal. 278 [165 Pac. 946]; *Sargent* v. *Shumaker*, 193 Cal.

122 [223 Pac. 464]; *Baldwin* v. *Brown*, 193 Cal. 345 [224 Pac. 462]; *Stevens* v. *Plumas etc. Min. Co.*, 2 Cal. (2d) 493 [41 Pac. (2d) 927]; *Central Nat. Bank* v. *Bell*, 5 Cal. (2d) 324, 328 [54 Pac. (2d) 1107]; *Billings* v. *Farm Development Co.*, 74 Cal. App. 254, 259, 264 [240 Pac. 298]; *Meyer* v. *Zuber*, 92 Cal. App. 767, 772 [268 Pac. 954]; *Bechtel* v. *Clemons, supra; Bechtel* v. *Wilson,* 18 Cal. App. (2d) 331 [63 Pac. (2d) 1170, 64 Pac. (2d) 785].) The charges of conspiracy and fraud made in appellant's brief have been found untrue by the trial court and we find no ground for disturbing its findings on that branch of the case.

▌ It is finally urged in appellant's behalf that the decision of the trial court is not sustained by the evidence because of the method adopted of proving or attempting to prove the existence of the defaults referred to and the alleged failure to prove at all the giving by the trustee of the notice of sale under the deed of trust. The method adopted by counsel for plaintiffs (respondents) of proving the defaults in the first instance was to refer to the judgment roll in the above-mentioned action bearing the San Bernardino superior court number 37010 in which many of the allegations of the complaint and denials in the answer parallel similar allegations and denials in the instant case; to read into evidence a given paragraph of the complaint in said case 37010 and also the responsive paragraph of the answer thereto; and then to read the court's finding on the issue thereby joined. To this method of procedure counsel for appellant interposed the general objection of incompetency, irrelevancy and immateriality with the further specific objection that the parties in the two actions were not the same. The matter offered was over such objection received in evidence by the court. In this ruling we perceive no error. As found by the court in the present action judgment was entered in case 37010 and has become final. It is on the other hand true, as the court also found in the instant case, that the cause of action involved in case 37010 was not the same involved here. What the plaintiff there sought, was to hold Krumm liable, not directly upon the note which he assumed, but on what was claimed to be an independent contract guaranteeing its payment, resulting from the language employed in the extension agreement already referred to. The judgment was, in effect, that he was not so liable under such independent contract.

We agree, of course, that what was there concluded cannot be *res judicata* as respects what is here involved, nor is there any doubt about the correctness of the rule of law as stated in *Purcell* v. *Victor Power & Min. Co.*, 29 Cal. App. 504, 510 [156 Pac. 1009], to the effect that:

"It is elementary and, indeed, necessarily true that the force of an estoppel by judgment resides in the judgment itself. It is not, in other words, the finding of the court or the verdict of the jury which concludes the parties, but the judgment entered thereon."

While, however, findings, though made between the same parties are not in strictness *res judicata* except as made so in consequence of a judgment entered upon them, they have nevertheless been held to be *prima facie* evidence of the matters found. (34 Cor. Jur. 888, 889, citing *Wall* v. *Hill*, 1 B. Mon. (Ky.) 290 [36 Am. Dec. 578].) The findings in respect of the default on the note here involved were not outside the issues in case 37010 but were responsive to issues made by the pleadings in that case, and indeed, the making of them was essential to the application of the *ratio decidendi* there, for unless it were there found that there had been a default in respect to one or more payments on the note, there would have been no occasion in that case to consider whether or not the alleged guarantee there insisted upon was effective as such or not. These findings are thereby distinguished from findings that are immaterial to the issues in the case, such as are referred to, for example, in *Collins* v. *Gray*, 154 Cal. 131, 135 [97 Pac. 142], and in the authorities there cited. So far as the parties are concerned there is nothing in the point that they were not the same in case 37010 as in the instant case. The defendant is the same and all three of the parties plaintiff in this case were also parties plaintiff in the former case. The only difference is that Attwood was made a party before and is not here. For the purposes under discussion that difference is immaterial.

 Although, in the circumstances, we do not think that any error was committed in receiving as part of plaintiffs' (respondents') proof the portions of the record in case 37010 that were admitted, an examination of the transcript in the instant case discloses that, even if they were excluded from consideration, it would make no difference in the result. So far as the defaults are concerned the rule is that he who

sues upon a note must allege nonpayment but is not required to prove it. (20 Cal. Jur., pp. 952, 953, and numerous cases cited.) Moreover, at the trial of the instant case, in answer to a question as to why he did not, during the month of January, 1934, "pay the interest which was then overdue in the neighborhood of $2100 or $2200", appellant answered, "Because I didn't have any money." Thereafter he testified to having paid in February of that year an aggregate of $1,067.50, and was asked the question: "And that made up one-half of the interest then due?" He answered "Correct". So far, therefore, as the interest specified in the notice of default is concerned, the correctness of the notice is established by appellant's own testimony. If he claims to have paid anything else with which he has not been credited he had every opportunity to show it. ▪▪▪ As respects the giving of the trustee's notice of sale it is enough to observe that the trustee's deed for the property sold is in evidence and recites in detail not only that the notice was given but the manner in which it was given and that by the terms of the deed of trust such recitals are made conclusive of the facts recited. This, as a matter of law, is sufficient to sustain the trial court's findings on that issue. (*Bechtel* v. *Wilson,* 18 Cal. App. (2d) 331, 335 [63 Pac. (2d) 1170, 64 Pac. (2d) 785]; citing *Sorensen* v. *Hall,* 219 Cal. 680 [28 Pac. (2d) 667]; *Stevens* v. *Plumas etc. Min. Co., supra; Central Nat. Bank* v. *Bell,* 5 Cal. (2d) 324 [54 Pac. (2d) 1107]; *Cobb* v. *California Bank,* 6 Cal. (2d) 389 [57 Pac. (2d) 924].)

For the reasons given the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 8, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 8, 1938. Edmonds, J., voted for a hearing.